## NATIONAL LABOR RELATIONS BOARD v. WYTHEVILLE KNITTING MILLS, Inc.

### No. 9897.

United States Court of Appeals Third Circuit.

Argued May 6, 1949.

Decided June 1, 1949.

Rehearing Denied July 1, 1949.

Owsley Vose, Washington, D. C. (David P. Findling, Associate General Counsel, A. Norman Somers, Assistant General Counsel, Gerald F. Krassa, Attorneys, National Labor Relations Board, Washington, D.C., on the brief), for petitioner.

Geoffrey J. Cunniff, Philadelphia, Pa. (Emanuel G. Weiss, Philadelphia, Pa., on the brief), for respondent.

Before MARIS, GOODRICH and Mc-LAUGHLIN, Circuit Judges.

MARIS, Circuit Judge.

This is a petition by the National Labor Relations Board for the enforcement of an order made by it against the respondent, Wytheville Knitting Mills, Inc., a corporation which is engaged in the manufacture, sale and distribution of hosiery at Wytheville, Virginia, and maintains an office at Reading, Pennsylvania. In June, 1946 a group of operators on single unit machines employed by respondent in its mill at Wytheville became dissatisfied with their earnings as compared with those of the operators on straight legger machines and went out on strike. The strikers called in a representative of the American Federation of Hosiery Workers from a neighboring community who advised them with respect to organization and supplied cards of application for membership in the union. These were distributed and many of the employees became members.

Richard C. Wetzel, the president of respondent, promptly came to Wytheville from Reading and posted a new schedule of piece rates at the mill which proved satisfactory to the striking employees and they returned to work. Shortly thereafter the union petitioned the Board for an investigation and certification of bargaining representatives at respondent's mill. The Board directed the holding of an election. The election was held on October 15, 1946, and resulted in the rejection of the union as the collective bargaining representative of respondent's employees by a vote of 123 favoring the union as against 140 opposed.

When the results of the election became known the union employees went out on strike. They maintained picket lines at the plant which had to be crossed by the nonstriking employees at least twice a day. Among the union employees who actively participated in the picketing were two girls employed in respondent's seaming department, Frances Q. Cox and Nettie Ann Fowlkes. While other pickets engaged in name-calling it appears that these two girls were far more abusive and offensive in the epithets which they hurled at the nonstrikers than any of the other pickets. This second strike lasted one week and was settled through the efforts of a federal conciliator. Under the terms of settlement the respondent agreed to reinstate all the strikers without discrimination. The striking employees returned to work on Octo

ber 22, 1946, with the exception of a few who lived outside of Wytheville and had not been notified on time. The latter employees, including Cox and Fowlkes, came to work the following day.

When Cox and Fowlkes appeared in the seaming department on October 23rd all but five or six of the 60 girls in the department, 25 of whom were union members, left their work stations, walked to the front of the mill and stated that they would not work so long as Cox and Fowlkes were in the mill. This action was wholly spontaneous and sprang from the deep resentment which had been engendered in these employees, union and nonunion alike, by the type of epithets which these two girls had shouted at their fellow employees.

When this demonstration by the employees of the seaming department took place Walter Houseman, the foreman of the department, inquired of one of the employees as to its cause and then at once reported the occurrence to the personnel manager, David B. Whitehurst. Pursuant to Whitehurst's instructions Houseman sent Cox and Fowlkes to the office where they spoke to Whitehurst and Paul Schmidt, the superintendent. The latter suggested that the two girls should go to their fellow employees off the premises and apologize to them in order to create a better feeling. They refused to do so, however. They were then directed to return to their homes for a few days until the situation cooled down. Subsequently on three occasions Houseman, at Schmidt's direction, interviewed the employees of the seaming department as to whether they were willing to work with Cox and Fowlkes if they returned and upon each occasion he was told that the employees would walk out if the two girls returned. Accordingly they were never actually reinstated although they have not been discharged.

Following these occurrences the Union filed objections to the conduct of the election and other charges against the respondent upon the basis of which the Board issued its complaint alleging that the respondent had engaged in unfair labor practices in that it had interfered with, restrained and coerced its employees in the exercise of rights guaranteed by Section 7 of the National Labor Relations Act, 29 U.S.C.A. § 157, and in that it had discharged and refused to reinstate Cox and Fowlkes because of their union activities.

With respect to the respondent's alleged interference, restraint and coercion of its employees in violation of Section 8(1) of the Act, 29 U.S.C.A. § 158(1), the Board found that prior to the election of October 15, 1946 two supervisory employees, Foreman Louis Porter and Head Fixer Albert Schuler, inquired of a large number of employees as to their attitude toward the union and as to their intended vote in the election; that Foreman Porter stated to one employee that if the union won the election the employees would lose all their privileges and that President Wetzel promised substantial insurance benefits as a makeweight in respondent's effort to defeat the union. Our examination of the record has satisfied us that there was substantial evidence to support these findings. In the light of these practices the Board set the election aside and entered its order directing the respondent to cease from the specific practices referred to and from in any other manner interfering with, restraining or coercing its employees in the exercise of the rights guaranteed to them by Section 7 of the Act.

With respect to the alleged violation of Section 8(3) of the Act involved in the action taken by the respondent with regard to employees Cox and Fowlkes, the trial examiner in his intermediate report recommended that so much of the complaint as alleged discriminatory treatment of Cox and Fowlkes should be dismissed. The Board declined to follow the trial examiner's recommendation but included in its order a direction to the respondent to offer reinstatement to Cox and Fowlkes with back pay. We are satisfied that this part of the Board's order is quite unjustified by the evidence and ought not be enforced. The trial examiner found "that the demonstration against Cox and Fowlkes was not based on the motives alleged in the complaint but rather on their use of obnoxious and offensive epithets. Such conduct is not a legitimate concerted activity entitled to

protection under the Act. Employees who remain at work are not required to tamely submit to such treatment. They are within their rights in refusing to work with individuals who persistently engaged in such conduct during the 5 days of the October strike. The work stoppage on October 23, 1946, was not directed against union membership and concerted activities in behalf of purposes protected by the Act but rather against unjustifiable and obnoxious conduct by Cox and Fowlkes while on the picket line. The demeanor and the testimony of witnesses who suffered these indignities clearly demonstrated that the indignation aroused was deep seated and persistent. It affected a considerable proportion of the union adherents in the seaming department who had participated in the strike."

We find ourselves in full agreement with the foregoing statement by the trial examiner. It is perfectly clear from the testimony that the resentment entertained by the employees of the seaming department against Cox and Fowlkes was not because of their union membership or activities as such but was caused by their special kind of name-calling. It appears that 25 of the 60 employees of that department were also members of the union and had participated in the strike. Many of them had served as pickets. All of these other employees were reinstated without protest on the part of anyone and, indeed, many of them participated in the demonstration against Cox and Fowlkes. The evidence is overwhelming that the situation in which these two girls find themselves is solely the result of the personal animosity which they incurred by the particularly obnoxious manner in which they verbally abused their fellow workers.

We do not regard the conduct of Cox and Fowlkes as a legitimate concerted activity entitled to the protection of the Act. When as a result of it each of them became persona non grata to their fellow workers to such an extent that the latter absolutely declined to work with them and threatened to walk out if they were permitted to remain at work the respondent was not required by the Act to reinstate them at the risk of throwing the seaming department into confusion. National Labor Relations Board v. Edinburg Citrus Ass'n, 5 Cir., 1945, 147 F.2d 353. In such circumstances these employees themselves have the duty to make their peace with their fellow employees if they desire to rejoin the working group. We conclude that the respondent was not guilty of an unfair labor practice in failing to permit Cox and Fowlkes to return to their work in the seaming department in opposition to the desires of the employees of that department and at the risk of its complete disorganization.

A decree will be entered modifying the order of the Board to the extent herein indicated and, as thus modified, enforcing it.