**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SUPERIOR TOOL & DIE COMPANY, Respondent.**

**No. 14778.**

United States Court of Appeals Sixth Circuit.

Nov. 16, 1962.

Nancy Sherman, Attorney, N. L. R. B., Washington, D. C., Stuart Rothman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Allison W. Brown, Jr., Attorneys, N. L. R. B., Washington, D. C., on brief, for petitioner.

Roy Browne, Akron, Ohio, John E. Kaufman, Akron, Ohio, on brief, for respondent.

Before McALLISTER and O'SULLIVAN, Circuit Judges, and DARR, Senior District Judge.

O'SULLIVAN, Circuit Judge.

The National Labor Relations Board here petitions for enforcement of its order finding respondent, Superior Tool & Die Co., guilty of unfair labor practices in violation of Sections 3(a) (1) and 8(a) (3) of the National Labor Relations Act (§ 158(a) (1), (3), U.S.C.A., Title 29). Its order (132 NLRB No. 110), affirming the findings, conclusions and recommendations of its Trial Examiner, directed respondent to cease and desist from described practices and affirmatively ordered respondent to offer re-employment to two former employees, Lucy LeMasters and Juanita Beryle McKibben, with reimbursement for wages lost following their discharge by respondent.

Respondent, Superior Tool & Die Co., operates a manufacturing plant at Akron, Ohio. On July 24, 1959, the United Steelworkers of America, AFL-CIO, was certified as the bargaining representative of respondent's production and maintenance employees. Following such certification, negotiations for the making of a collective bargaining contract began. During such negotiations, respondent's representatives made statements and indulged in conduct which could be found to constitute unfair labor practices. Efforts to agree upon a contract failed, and on September 1, 1959, the union struck respondent's plant and a picket line was established. The strike lasted until October 26, 1959. During its continuance, respondent's officers sought to dissuade some of the pickets from persisting in the strike. Defections occurred within the union ranks and some of the employees (including one of the union's officers) returned to work. During the strike, two petitions for decertification of the union were filed; one by a group of employees, and one by respondent. The Regional Director dismissed both as untimely filed. During the course of the strike, the union filed an unfair labor practice charge against the company, identified in the record as Case No. 8–CA–1991.

The picketing at respondent's plant was not peaceful. While none of

the non-striking employees were physically injured, threats of harm and other verbal abuse were directed to them by the pickets; women pickets were joined by their husbands; a blackjack and hammer were carried on the seat of one of the striker's cars; a knife was exhibited by one of the pickets; sand was put into the gas tank of the company's truck and it and its tractor were pushed over a hill; nails were strewn on the driveway to the company's plant; a supervisor's car was run off the road; and there was evidence that the windows in respondent's plant were broken by the strikers. Of crucial significance here is the evidence that Lucy LeMasters and Juanita McKibben were among the most vocal of the pickets in making threats to "get" the non-strikers and were vociferous in their name-calling.

The strike ended when the respondent and the union, on October 26, 1959, entered into a collective bargaining agreement, whereby the union was to be the sole bargaining agent for all of respondent's employees. The agreement provided for a union shop with check off of union dues, maintenance of membership and a requirement that all persons employed after the date of the contract become members of the union after 30 days of employment. Not all of the strikers who had been replaced during the strike were immediately rehired. Instead, a preferential hiring list was agreed to, whereby such replaced employees would, in order of seniority, be the first to be hired as vacancies occurred. LeMasters and McKibben were second and third on such list. On October 29, 1959, as a part of the settlement of the strike, the union withdrew the charges of unfair labor practice that it had filed against the company in Case No. 8–CA–1991. Respondent's plant resumed operation.

In January, 1960, pursuant to its agreement with the union, respondent notified Lucy LeMasters and Juanita McKibben to come to work. On January 11, LeMasters reported for work. Upon her arrival, all of the other employees on the shift, fifteen men and five women, refused to work. Their refusal to work was based on the threats and name-calling engaged in by LeMasters on the picket line. Some of them said they didn't trust her and were afraid of her because of her threats and other abuse during the strike. The foreman reported the situation to respondent's President, Rice, who came out and urged the employees to go to work. He advised them that he was required to rehire LeMasters under the agreement with the union and that they were jeopardizing their jobs by their refusal to work. The employees persisted in their refusal to work. Respondent then discharged LeMasters.

On the next day, a similar situation arose when McKibben reported for work. The entire shift refused to work if McKibben was re-employed, giving substantially the same reasons for their refusal as in the case of LeMasters. Respondent's President again attempted to persuade the employees to work with McKibben, but without success. McKibben was then discharged.

Following the above discharge, the union filed a new charge of unfair labor practice against the company which became Case No. 8–CA–2073. After a hearing was held on the charge, the trial examiner made the following findings relevant to respondent's conduct and motivation in discharging LeMasters and McKibben:

"I find no evidence that the respondent notified the other employees in advance that LeMasters and McKibben had been recalled. Nor does the record support the contention of the General Counsel and the union that this respondent influenced its employees concertedly to refuse to work with Lemasters and McKibben.

\*　　\*　　\*　　\*　　\*　　\*

"Likewise, the motivation behind the discharge of Lemasters and McKibben was primarily to attempt to keep respondent's shop in production, rather than a desire to punish these two strikers for their participation in concerted activities."

■■ Notwithstanding such findings, the trial examiner, affirmed by the Board, found that respondent violated Sections 8(a) (1) and (3) of the Act in discharging LeMasters and McKibben. He reasoned that despite the absence of any discriminatory motive on respondent's part, the non-strikers' refusal to work with the discharged employees stemmed from the latters' "union activities" on the picket line, and they were, therefore, immune from discharge for such purpose. However, not all "union activity" or concerted action is protected activity within the meaning of Section 7 of the Act. See Caterpillar Tractor Co. v. N. L. R. B., 230 F.2d 357, 358 (C.A.7, 1956); N. L. R. B. v. Peter Cailler Kohler Swiss Choc. Co., 130 F.2d 503, 506 (C.A.2, 1942); N. L. R. B. v. Fansteel Metal Corp., 306 U.S. 240, 59 S.Ct. 490, 83 L.Ed. 627. Had the picketing at respondent's plant been peaceful and the refusal to work arisen solely because the discharged employees engaged in such protected activity, a different question would be presented. We do not think that the use of scurrilous epithets and threats by employees is the type of activity Congress intended to protect.[1] It is understandable that the employees to whom such verbal abuse was directed would feel resentment, fear and animosity toward those engaged in such conduct. It is not unnatural that they would refuse to work with individuals who had thus made themselves obnoxious. As the Board, itself, and other courts have held, in the absence of facts which show an unlawful discriminatory motive based on some protected activity, an employer does not violate the Act by discharging an employee "with whom other employees have refused to work because he has become *persona non grata* with them." Studebaker Corporation, 110 NLRB 1307, 1321, 1322; N. L. R. B. v. Edinburg Citrus Ass'n., 147 F.2d 353

(C.A.5, 1945); N. L. R. B. v. Wytheville Knitting Mills, 175 F.2d 238, 239, 240 (C. A.3, 1949); N. L. R. B. v. Spiewak Co., 179 F.2d 695, 699–701 (C.A.3, 1949); Queen-Premier-Williams Fur Dressing Corp., 92 NLRB 42. The trial examiner specifically found that respondent had no discriminatory motive in making the discharges here involved, but acted solely in order to keep its plant operating. The conclusion that the discharges of LeMasters and McKibben were discriminatory is not supported by substantial evidence and must be set aside. Our holding in this regard is supported by the decisions of the Third and Fifth Circuits, and of the Board, cited above.

■ In addition to the foregoing, the examiner considered the pre-strike settlement conduct of the respondent and found that such conduct violated Section 8(a) (1) of the Act. It is clear, however, that the examiner's consideration of such conduct was bottomed entirely upon his conclusion that respondent violated the Act in discharging LeMasters and McKibben. He recognized the salutary policy of the Board in not reviving old charges where voluntary settlements of disputes have been made. The Ohio Calcium Company, 34 NLRB 917; Rice-Stix of Arkansas, Inc., 79 NLRB 1333; Jackson Manufacturing Company, 129 NLRB 460. He also correctly observed that where such policy is frustrated by postsettlement misconduct of an employer, it is appropriate for the Board to consider events antedating the settlement. The Wallace Corporation v. N. L. R. B., 323 U.S. 248, 255, 65 S.Ct. 238, 89 L.Ed. 216. Holding, however, that no violation was involved in the discharge of LeMasters and McKibben, we are of the opinion that the Board's finding of presettlement violations was without warrant.

The order of the Board is set aside, and its enforcement denied.

---

1. In Queen-Premier-Williams Fur Dressing Corp., 92 NLRB 42, the Board held that the Act was not violated when an employer discharged an employee with whom his co-workers refused to work because of verbal abuse directed at them by the discharged employee. See, also, Caterpillar Tractor Co. v. N. L. R. B., 230 F.2d 357, 358 (C.A.7, 1956).