NATIONAL LABOR RELATIONS
BOARD, Petitioner,
v.
ELIAS BROTHERS BIG BOY, INC.,
et al., Respondents.

No. 15180.

United States Court of Appeals
Sixth Circuit.

Dec. 11, 1963.

taurants and, in addition, has granted franchises to certain other restaurants under which the licensees are permitted to advertise and sell the "Big Boy" sandwiches and other Elias products. Among the licensees are respondents Greenfield Holiday, Inc., referred to herein as "Greenfield," and Holiday Drive-In, Inc., referred to herein as "Holiday."

The National Labor Relations Board filed complaints against Elias, Greenfield, Holiday and another Elias licensee known as Livonia Big Boy, Inc., charging certain unfair labor practices hereinafter set forth in more detail. The cases were consolidated for hearing, with the General Counsel contending that all four corporations constituted a single employer for jurisdictional purposes.

The Board ruled that Elias and Livonia would not be considered a single employer and dismissed the complaint as to Livonia. It further held that Elias, Greenfield and Holiday did not constitute a single employer. As to Greenfield and Holiday, however, the Board held that the ownership and operations of these two corporations were such that they should be treated as a single employer for jurisdictional purposes. It is not disputed that when its operations are considered separately, Elias is subject to the jurisdiction of the Board. Thus there are involved here two employers, (1) Elias and (2) Greenfield and Holiday.

Finding Elias and Greenfield guilty of certain unfair labor practices, the Board entered a cease and desist order, directed the reinstatement of three employees and required the posting of the customary notices. The decision and order of the Board are reported at 137 N.L.R.B. No. 116. The Board has filed a petition in this Court for enforcement of its order.

We grant enforcement in part and deny enforcement in part.

First we consider the action of the Board in treating Greenfield and Holiday as a single employer for jurisdictional purposes. It was found that in a representative year Greenfield made retail sales of goods valued at $405,146 and that its

William J. Avrutis, N. L. R. B., Washington, D. C. (Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, on the brief), for petitioner.

George N. Bashara, Jr., Detroit, Mich., for respondents.

Before WEICK and PHILLIPS, Circuit Judges, and DARR, Senior District Judge.

PHILLIPS, Circuit Judge.

Elias Brothers Big Boy, Inc., referred to herein as "Elias," sells and distributes in the Detroit area several restaurant products, featuring a special type of hamburger sandwich known as "Elias Brothers Big Boy." Elias operates eight res-

annual purchases from Elias of merchandise which the latter had received from outside the State of Michigan exceeded $20,000; and that during a similar twelve month period the retail sales of Holiday totaled $319,518 and its purchases from Elias of goods received directly from states other than Michigan were valued at $10,000. The General Counsel conceded at the hearing before the Board that if Greenfield and Holiday were considered separately, the Board would not assert jurisdiction.[1]

The Board found that Greenfield and Holiday are Michigan Corporations, each of which operates two drive-in restaurants under Elias franchises in the Detroit area; that they have common officers and directors; that six individuals who are officers and directors of both corporations own all the shares of stock of Holiday and one-half the stock of Greenfield; that the same officer who serves as secretary of Greenfield and secretary-treasurer of Holiday is general manager for both companies, and that the same general manager is responsible for the overall operations of the two corporations and the establishment of personnel policies on such matters as wage rates and hours of employment; that the discharge of an employee in either corporation must be cleared through the same general manager before it is effective; that immediately below the general manager in line of authority is a supervisor who is on the payroll of both corporations and is responsible for the day to day management of both companies, and who goes to the restaurants operated by both companies almost daily; and that all corporate books and records for both corporations are kept at the same location, and the same clerical staff computes and maintains the payroll records for employees of both corporations.

Respondents deny the authority of the Board to treat the two corporations as a single employer, relying upon the fact that they keep separate bank accounts, maintain separate social security numbers, file separate tax returns and, in general, have preserved their separate corporate identities.

■ The findings and conclusions of the Board with respect to the interlocking management and control of these two corporations are supported by substantial evidence on the record. We conclude that the Board was justified, under these facts, in treating the two corporations as a single employer for jurisdictional purposes. N. L. R. B. v. Stowe Spinning Co., 336 U.S. 226, 69 S.Ct. 541, 93 L.Ed. 638; N. L. R. B. v. Gibralter Industries Inc., 307 F.2d 428 (C.A.4), cert. denied, 372 U.S. 911, 83 S.Ct. 724, 9 L.Ed.2d 719; N. L. R. B. v. Concrete Haulers, Inc., 212 F.2d 477 (C.A.5).

We now consider the various unfair labor practices with which respondents are charged. The Board found that Elias in certain instances and Greenfield in others were guilty of unfair labor practices in violation of Section 8(a) (1) and (3) of the National Labor Relations Act, 29 U.S.C. Section 158(a) (1) and (3), viz.: (1) a company rule by Elias against solicitations on the premises; (2) the action of Elias in soliciting and assisting an employee in withdrawing from the union; (3) interrogation by both corporations of employees concerning their union activities; (4) confiscation of union literature; and (5) the discriminatory discharge of three employees.

*The Company Rule Against Solicitation*

■ Some time prior to the union campaign to organize its employees, Elias adopted the following company rule against solicitations: "No solicitation allowed in any Big Boy Drive-In unless ap-

---

**1.** This concession is grounded on the Board's self-imposed policy limiting the size of establishments over which it will assert jurisdiction and is not based on an express statutory restriction. See Caroline Supplies & Cement Co., 122 N.L.R.B. 88, in which the Board stated that it would assert jurisdiction only over those retail business establishments which are within its statutory jurisdiction and which do a gross volume of business of at least $500,000 per annum.

proved by the Main Office." A notice to this effect over the signature of Elias' general manager was posted in at least one of respondent's restaurants. In his intermediate report the trial examiner found that there was no showing that this rule was initially adopted for a discriminatory purpose and that the rule is not *per se* a violation of the Act. The Board reversed the trial examiner on this point and held that the rule was invalid and that by maintaining said rule in effect Elias violated Section 8(a) (1). We find no evidence on the record in this case that Elias has ever questioned or denied the right of its *employees* to solicit support for a labor union or membership in a union on company premises during their non-working time. See Republic Aviation Corp. v. N. L. R. B., 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372; N. L. R. B. v. Monarch Tool Co., 210 F.2d 183 (C.A.6), cert. denied, 347 U.S. 967, 74 S. Ct. 778, 98 L.Ed. 1109. While the order of the Board goes no further than to prohibit such practice, this provision in the order is not appropriate under the facts of this case, because Elias is not shown to have been guilty of such a practice. Enforcement therefore is denied of this part of the Board's order.

*Soliciting and Assisting Employee in Withdrawing from Union*

The Board found that Martha J. Brooks, a waitress for Elias, signed a union authorization card early in the unionization drive; that on the following day the manager of the restaurant where this waitress worked questioned her as to whether she had been contacted by the union and whether she had signed a card; that when the waitress answered in the affirmative, the local manager suggested that she could withdraw from the union by writing a letter to that effect; that two days later Elias' general manager suggested that she could write a letter of resignation to the union if she chose and shortly thereafter the waitress told the general manager that she would sign a letter of withdrawal; and that the general manager thereupon produced the following prepared letter, which the waitress signed and handed back to him:

"AFL-CIO
"Hotel and Rest. Employees Union
"Local 705
"100 Selden
"Detroit, Michigan

"Gentlemen
"I am employed by Ellias [sic] Brothers Big Boy Drive Ins as a waitress. On Friday, June 2 two men from your union approached me and gave me a brochure stating the advantages of belonging to your union. They said there was a time limit and without giving me too much information suggested I sign the agreement at that time.
"I did so, but I feel it was a mistake because I realize I am completely satisfied with my position at Elias Brothers and don't feel it necessary to join a union.
"Please accept this letter as a cancellation of the agreement I signed in haste.
"Sincerely,"

The Board further found that the waitress neither dictated this letter nor asked that it be prepared, but that she signed it when the finished letter was submitted to her by the general manager, and then had nothing further to do with it; and that shortly thereafter the letter was delivered to union headquarters via registered mail. These findings are supported by substantial evidence on the record. We hold that the Board was justified in concluding that this action on the part of Elias in soliciting and assisting its employee in withdrawing from the union constituted a deterrent to the employee's freedom of action and a violation of Section 8(a) (1) of the Act. N. L. R. B. v. United Biscuit Company, 208 F.2d 52, 55 (C.A.8), cert. denied 347 U.S. 934, 74 S.Ct. 629, 98 L.Ed. 1085. See also N. L. R. B. v. Valley Broadcast Co., 189 F.2d 582 (C.A.6).

This part of the Board's order will be enforced.

### Interrogation of Employees Concerning Union Activities

The Board found that both Elias and Greenfield interrogated employees concerning their signing of union cards and their union activities in a manner constituting interference, restraint or coercion in violation of Section 8(a) (1) of the Act. The intermediate report contains only the following findings with respect to interrogation: That Martha J. Brooks, a waitress employed by Elias, was questioned on one occasion by her manager as to whether she had been contacted by the union and whether she had signed a card, and two days later Elias' general manager questioned her as to whether she knew anything about the union; and that the local manager for one of Greenfield's restaurants asked an employee named Louise McCord on one occasion whether she had signed a union card. These are the only instances of interrogation set forth in the intermediate report or in the decision and order of the Board. As said by this Court in N. L. R. B. v. Tennessee Coach Co., 191 F.2d 546, 555 (C.A.6): "Before inquiries as to union membership and statements by employers or supervisory employees can be held to be unfair labor practices, they must be shown to have some relation to the coercion or restraint of the employees in their right of self-organization." Infrequent, isolated and innocuous inquiries of a relatively small number of employees, standing alone, do not constitute interference, restraint or coercion within the meaning of Section 8(a) (1) of the Act. N. L. R. B. v. Armour & Co., 213 F.2d 625 (C.A.5); Burke Golf Equipment Corp. v. N. L. R. B., 284 F.2d 943 (C.A. 6). "Interrogation of employees about membership in the union may or may not amount to coercion, depending upon the manner in which it is done and the surrounding circumstances." United Fireworks Mfg. Co. v. N. L. R. B., 252 F.2d 428, 430 (C.A.6).

Except for subsequent events with respect to these two employees, the foregoing interrogations, standing alone, could not be held to be a violation of the Act. Following closely upon the heels of these interrogations, however, respondents committed acts with respect to each of the two interrogated employees which we hold to be unfair labor practices. Following the interrogation of Martha J. Brooks, Elias solicited and assisted her in withdrawing from the union, as hereinabove set forth. Within less than two weeks after the interrogation of Louise McCord, Greenfield discharged her discriminatorily for her union activities, as hereinafter discussed in some detail.

In determining whether interrogation of employees is a violation of the Act, the trial examiner and the Board have a right to consider "the background of such inquiries, the time and manner of their being made, and all the surrounding circumstances." N. L. R. B. v. Flemingsburg Manufacturing Co., 300 F.2d 182, 184 (C.A.6).

In view of the subsequent unfair labor practices of respondents following so closely after the interrogations in question, we cannot say that the Board was in error in holding that the interrogations had a relation to coercion or restraint of these two employees in their right of self organization.

Enforcement is granted of this part of the Board's order.

### Confiscation of Union Literature

The Board found that on June 2, 1961, two union organizers appeared at an Elias restaurant and passed through the dining room distributing organizational leaflets to the employees and leaving them on the tables, counters and work places. In the words of one of the organizers the leaflets were put "everyplace conceivable." It appears that this was done during the noon rush hour. This action by the union organizers was rude and highhanded and the management was justified in asking the two organizers to leave, in instructing the employees not to read the leaflets during working time and in removing the leaflets from tables, counters, and work places and destroying them. After the commotion had ceased,

however, the manager of the restaurant demanded that the employees turn over to him all the leaflets in their possession, including literature which employees had put away for future reference. When the manager confiscated the leaflets from the individual employees he was interfering with their rights under the Act. His action cannot be justified on the ground of the irresponsible manner in which the literature was distributed by the two union organizers.

At another Elias Restaurant the manager confiscated and tore up a handful of leaflets which had been given to one of the waitresses for distribution to the other employees.

With respect to Greenfield, the Board found that the local manager confiscated union literature and pamphlets which had been distributed to the employees. On one occasion a local manager inquired of employee Louise McCord whether she had any union literature and accompanied her to the locker room where she pointed out some organizational leaflets.

The Supreme Court has said: "The right of self-organization depends in some measure on the ability of employees to learn the advantages of self-organization from others." N. L. R. B. v. Babcock & Wilcox Co., 351 U.S. 105, 113, 76 S.Ct. 679, 684, 100 L.Ed. 975. This Court said in N. L. R. B. v. Lake Superior Lumber Corp., 167 F.2d 147, 151 (C.A.6) that the statute includes the right of employees to "be informed concerning their collective bargaining rights."

■ We hold that the Board was correct in finding that respondents violated Section 8(a) (1) in confiscating union literature from its employees and destroying it.

*Discharge of Three Employees*

The Board found that two employees of Elias, Mary Harris and Bettie Gene Komorek, and one employee of Greenfield, Louise McCord, were discharged discriminatorily because of their union activities; and ordered immediate and full reinstatement to their former or substantially equivalent positions, and that they be made whole for any loss of pay suffered as a result of their discriminatory discharges.

We grant enforcement as to Mary Harris and Louise McCord and deny enforcement as to Bettie Gene Komorek.

■ The Board found that Mary Harris was handed a union leaflet when two union organizers appeared at the restaurant where she was working and that she refused to surrender the leaflet to the local manager upon his demand; that the local manager told her "to punch the time card and take the rest of the day off," and instructed her to speak on the telephone to a Mr. Johnson, identified as supervisor at the main office; and that Johnson told her that if the union gets into the restaurant "they will take a large sum of your money, your pay * * * They'll take so much that we'll have to close our doors and go home and we'll all be out of a job." This was clearly an unfair labor practice under our decisions. United Fireworks Mfg. Co. v. N. L. R. B., 252 F.2d 428 (C.A.6).

When Harris left the restaurant, she asked the local manager several times whether she was being discharged, but he ignored her question and did not reply. The union sent a telegram to Elias that afternoon asking whether this waitress should report for work the following day. The next morning the local manager telephoned Harris and asked that she report for work at the regular time. When she reported at the restaurant, the local manager told her that her work was unsatisfactory and that he was discharging her.

The Board's findings concerning the discharge of Louise McCord may be summarized as follows: This employee had worked for Greenfield as a kitchen helper on a part-time basis since 1960; in May 1961 she signed a union authorization card, and thereafter assisted in distributing union literature at the Greenfield restaurant; upon questioning by the local manager, she admitted that she had signed a union card and had union leaflets in her possession; and within less than two

weeks she was notified by respondent's manager that her services were no longer needed, that business was slow and that, if business improved, he would call her.

 With respect to both Mary Harris and Louise McCord, respondents contend that they were unsatisfactory employees and that they were discharged for cause. The Board found that they were discriminatorily discharged because of their union activities, in violation of Section 8(a) (3) of the Act. Although there is evidence in the record that the services of both of these employees had been unsatisfactory in many respects, they were kept on the payroll for a period of months and their work apparently became intolerable only after they had joined the union. See N. L. R. B. v. Electric City Dyeing Co., 178 F.2d 980, 983 (C.A. 3). We hold that the findings of the Board to the effect that these two employees were discriminatorily discharged for union activities are supported by substantial evidence. As said in N. L. R. B. v. Montgomery Ward & Co., 242 F.2d 497, 502 (C.A.2): "The abruptness of a discharge and its timing are persuasive evidence as to motivation." Enforcement of those parts of the order of the Board relating to these two employees is granted. N. L. R. B. v. Bendix Corp., 299 F.2d 308 (C.A.6), cert. denied, 371 U.S. 827, 83 S.Ct. 47, 9 L.Ed.2d 65; N. L. R. B. v. Solo Cup Co., 237 F.2d 521 (C.A. 8); N. L. R. B. v. Tepper, 297 F.2d 280 (C.A.10).

With respect to Bettie Gene Komorek, a waitress for Elias, the Board also held that she was discriminatorily discharged. The Board found that during the union organizational drive, this waitress invited a number of the other waitresses to visit her home at the end of the night shift, in order to attend what she represented to be a surprise birthday party for her husband. After her fellow employees arrived at her home following the end of their work day at 2:00 a. m., they found no birthday party or refreshments, but instead were met by a union representative. Komorek then told her fellow waitresses that the union representative wanted to discuss the advantages of unionization with them. After the union representative had been talking for some time, a heated dispute arose concerning the accuracy of certain statements about the earnings of carhops employed by Elias. The other waitresses thereupon walked out of the meeting and went home.

When Komorek reported for duty two days later, the other waitresses refused to work with her. They told the manager that they would not go on the floor and work with Komorek because she had tricked them into going to her house and had deceived them about the birthday party. One of the waitresses accused Komorek of taking her tips.

 When the other waitresses persisted in their refusal to work with her, the local manager offered to transfer Komorek to one of the other Elias restaurants. Komorek refused to accept a position at another restaurant in Detroit because she said it was too far away and would present transportation difficulties. The Board held that the transfer constituted a discharge and that this waitress was fired discriminatorily because of her union activities. We find no substantial evidence on the record supporting this finding of the Board. To the contrary we find that the action of Elias in proposing to transfer this waitress to another restaurant after her fellow waitresses refused to work with her was reasonable and justified under the circumstances and did not constitute a discriminatory discharge. The order of the Board with respect to Bettie Gene Komorek will not be enforced. N. L. R. B. v. Superior Tool & Die Co., 309 F.2d 692 (C.A.6); N. L. R. B. v. Spiewak, 179 F.2d 695 (C.A.3); N. L. R. B. v. Edinburg Citrus Association, 147 F.2d 353 (C.A.5).

*Conclusion*

Enforcement of the Board's order will be denied with respect to the company rule of Elias against solicitation and the discharge and reinstatement of Bettie Gene Komorek. In all other respects enforcement is granted.