**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SOUTHEASTERN STAGES, INC., Respondent.**

**No. 27995.**

United States Court of Appeals, Fifth Circuit.

March 2, 1970.

Marcel Mallet-Prevost, Asst. Gen. Counsel, William F. Wachter, Ronald Greenberg, Attys., N.L.R.B., Washington, D. C., Walter C. Phillips, Director, Region 10, N.L.R.B., Atlanta, Ga., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, for petitioner.

Alexander E. Wilson, III, Wilson, Branch & Wilcox, Atlanta, Ga., for respondent.

Before JONES, BELL and GODBOLD, Circuit Judges.

JONES, Circuit Judge:

The National Labor Relations Board has petitioned this Court for enforcement of the Board's order by which it found the respondent, Southeastern Stages, Inc., to be in violation of Sections 8(a) (1) and (3) of the National Labor Relations Act, and by which it directed that Southeastern cease and desist from interfering with organizational activities of its employees, and that it offer reemployment with back pay to discharged em-

ployee Maurice Bussey, with the posting of the usual notices of compliance.

Southeastern operates buses for the transporation of passengers between various points in Georgia and South Carolina. It has terminals in Augusta and Atlanta. It employs approximately 55 drivers and 12 mechanics. In April 1967, the Amalgamated Transit Union [1] began a campaign to organize the drivers. A union organizer was in Augusta between April 12 and April 15 to talk to the drivers and procure union authorization cards from them. Bussey, one of Southeastern's drivers, became a union adherent and this became known to Southeastern. A petition for an N.L.R.B. election was filed on July 4, 1967. During this campaign, some of the drivers were approached by Southeastern supervisors and asked about their union sympathies and desires. O. D. Shipman, Sr., Manager of the Augusta terminal, conversed with driver Bussey about the union on three separate occasions. On one occasion Shipman told Bussey that he hoped Bussey would change his mind about the union. On another occasion, a day or two preceding the election, Bussey was told by Shipman that if the election went in favor of Southeastern he would have to be a "perfect driver." The election was held on August 2 and 3, 1967, and the results favored Southeastern. Within a few days following the election, Shipman conversed with a driver and told him that he was "going to get Bussey."

Prior to the election, a charge had been filed by the union asserting violations of Sections 8(a) (1) and (3) of the Act. This charge was amended on August 4, 1967, to allege only violations of Section 8(a) (1). The charge was settled on August 28, 1967, when the parties, with the approval of the Board's Regional Director, entered into a settlement agreement. The matter seemed to have been terminated on November 3, 1967, when the Regional Director notified Southeastern that the file was being closed.

Subsequently, on November 15, driver Bussey was discharged by Southeastern and on November 20 he filed a charge claiming unlawful discharge in violation of Section 8(a) (3). A similar charge was filed by another employee, Paul Hammock, on June 4, 1968. Thereafter, the Regional Director notified Southeastern that his approval of the settlement agreement had been withdrawn, thereby reinstating the charge of pre-settlement Section 8(a) (1) violations.

The cases of Bussey, Hammock and the union were consolidated and a company motion to dismiss the Section 8(a) (1) charge covered by the settlement agreement was denied. The Board, adopting and following the Trial Examiner's findings and recommendations, determined that the discharge of Hammock was not in violation of Section 8(a) (3), the discharge of Bussey was in violation of Section 8(a) (3), and Southeastern was guilty of a violation of Section 8(a) (1) and the settlement agreement did not bar litigation of this question. The Board ordered that Southeastern refrain from Section 8(a) (1) violations, that Bussey be offered reemployment and reimbursement for lost wages and that an appropriate notice be posted.

Southeastern argues that there is no substantial evidence to support the decision of the Board, and that the Board erred in setting aside the settlement agreement and permitting litigation of the charge of a Section 8(a) (1) violation. Although there is ample evidence to show that the discharge of Bussey would have been proper if it was wholly free from any anti-union animus on the part of the employer, there is substantial evidence from which the Trial Examiner and Board could properly find, as they did, that the union activity of Bussey was a motivating cause of his discharge in violation of Section 8(a) (3). This being true, the Board's order directing an offer of reemployment and reimbursement for lost wages will be enforced. The evidence before the Examiner and the Board was such as to support the

1. Union Local Division 1493, Amalgamated Transit Union, AFL–CIO–CLC.

finding that Southeastern had been guilty of violations of Section 8(a) (1) prior to the settlement agreement.

This leaves for consideration the question as to whether the Board could properly set aside the settlement agreement and find a presettlement violation of Section 8(a) (1). It should be noted from the outset that Southeastern does not deny the use of presettlement conduct as background evidence in support of the Section 8(a) (3) violation.[2] It contends that the settlement agreement is a bar to the maintenance of a charge of Section 8(a) (1) violations occurring prior to the settlement in the absence of a showing that the violator has breached its terms by engaging in the same type of conduct as covered by the agreement.

 The adoption of Southeastern's contention would unduly limit the Board's power and effectiveness in the protection of labor and management from unfair labor practices and would be contrary to the current trend of the decided cases. As observed by the Supreme Court, "[The Board] has consistently gone behind [settlement] agreements * * * where subsequent events have demonstrated that efforts at adjustment have failed to accomplish their purpose, or where there has been a subsequent unfair labor practice. We think this rule adopted by the Board is appropriate to accomplish the Act's purpose with fairness to all concerned." Wallace Corp. v. N.L.R.B., 323 U.S. 248, 254–255, 65 S.Ct. 238, 241, 89 L.Ed. 216, 226–227. This holding of the Supreme Court has been interpreted to mean that a settlement agreement can be set aside and presettlement violations found, when there has been a breach of the agreement, or when there has been a subsequent independent violation of the Act by a party to the agreement. N.L.R.B. v. Bangor Plastics, Inc., 6th Cir. 1957, 392 F.2d 772; N.L.R.B. v. Dressmakers Joint Council, etc., 2d Cir. 1965, 342 F.2d 988; Lincoln Bearing Co. v. N.L.R.B., 6th Cir. 1962,

311 F.2d 48; N.L.R.B. v. Superior Tool & Die, 6th Cir. 1962, 309 F.2d 692; International Brotherhood of Teamsters, etc., Local No. 554 v. N.L.R.B., 1958, 104 U.S. App.D.C. 359, 262 F.2d 456. While this Court has not heretofore been directly confronted with the question as it is now presented, it has through previous enforcement of Board orders, given implicit approval to the general rule as above stated. N.L.R.B. v. Guild Industries Manufacturing Corp., 5th Cir. 1963, 321 F.2d 108. A settlement agreement may be set aside where, as here, a showing is made that the agreement terms have been breached. News-Texan, Inc., v. N.L.R.B., 5th Cir. 1970, 422 F.2d 381.

 Since Bussey was discharged subsequent to the settlement agreement and in violation of Section 8(a) (3), it follows that the Board was not precluded from setting aside the settlement agreement and taking remedial action with respect to violations of Section 8(a) (1) occurring prior to the settlement. This it has done and there is substantial evidence to support the action taken. The order will be enforced.

---

2. See, e. g., Steves Sash & Door Co. v. N.L.R.B., 5th Cir. 1968, 401 F.2d 676; N.L.R.B. v. Northern California Dist.

Council of Hod Carriers, etc., 9th Cir. 1967, 389 F.2d 721.