**U.S. CONTRACTORS, INC., Petitioner-Cross Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent-Cross Petitioner.**

**INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 564, AFL–CIO, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

Nos. 81–4394, 81–4414.

United States Court of Appeals, Fifth Circuit.

Feb. 7, 1983.

James M. Neel, Houston, Tex., for U.S. Contractors, Inc.

James P. Simpson, Texas City, Tex., for Intern. Union of Operating Engineers, etc.

Elliott Moore, Deputy Associate Gen. Counsel, David S. Fishback, Associate Gen. Counsel, N.L.R.B., Washington, D.C., for N.L.R.B.

Richard R. Brann and Joseph R. Weeks, Houston, Tex., for Dow Chemical Co.

Before INGRAHAM, REAVLEY and POLITZ, Circuit Judges.

1. 257 N.L.R.B. 1180 (1981).

INGRAHAM, Circuit Judge:

On September 3, 1981, the National Labor Relations Board (Board) issued an order [1] finding U.S. Contractors and Dow Chemical, U.S.A., Texas Division (Dow) in violation of section 8(a)(1) of the National Labor Relations Act (Act), 29 U.S.C. § 158(a)(1), by threatening U.S. Contractors' employees with the loss of their jobs if they unionized. U.S. Contractors petitioned this court for review of the order alleging that the Board was barred by a January 23 settlement agreement from basing a labor violation on presettlement campaign conduct and that the findings were not supported by substantial evidence. The Board, however, cross-applied for enforcement of the order against U.S. Contractors.[2] Further, International Union of Operating Engineers, Local 564, AFL–CIO (Union) petitioned for review of the same decision and order and attacked the Board's findings that U.S. Contractors did not violate sections 8(a)(1), (3) and (5) by discontinuing its custodial operations and that Dow did not violate sections 8(a)(1) and (3) when U.S. Contractors cancelled its custodial contract with Dow. Although a review of the record reveals substantial evidence supporting the Board's findings, we hold that the settlement agreement precluded the Board from litigating U.S. Contractors' presettlement conduct. Thus, the Union's petition for review is denied, the U.S. Contractors' petition for review is granted, and the Board's cross-application for enforcement against U.S. Contractors is denied.

U.S. Contractors is a Texas corporation engaged primarily as a mechanical and maintenance contractor in the petrochemical industry and employs approximately 1400 people. Dow operates its immense Plant B petrochemical facility at Freeport, Texas. At the request of Dow, for whom U.S. Contractors was already providing construction work, U.S. Contractors expanded into the custodial services business in 1972. The U.S. Contractors custodial work force comprised 60 employees, whose work was limited to a yearly purchase-order contract

2. The Board withdrew its application for enforcement of the order against Dow.

for Dow's Plant B.[3] The last of these contracts was executed on December 29, 1978, one day after the U.S. Contractors custodial employees voted for union representation.

The events of this controversy can be categorized in three periods: early organizational, campaign and election, and post-settlement. Early organizational activities began in August 1978, when two U.S. Contractors custodial employees, Anderson and Carlson, approached the Union Business Agent to discuss organizing U.S. Contractors custodial employees. A representation petition was filed on September 29 and resulted in direction of an election that was held on December 28. After the early organizational activities calmed in September, union related conduct flared again during the campaign and election in November and December. Together these two periods comprise presettlement conduct. Finally, the discontinuation of the custodial business in February and March of 1979 is encompassed within the post-settlement period.

The Administrative Law Judge and the Board found that during the early organizational period U.S. Contractors assigned various employees associated with the union drive to less desirable or irregular work hours and more arduous job duties and even discharged some in September 1978. This conduct precipitated the filing of a charge and amended charge by the Union on September 22 and November 13, respectively, and a complaint by the Board on January 2, 1979.

Since the events surrounding the campaign, the election, and postsettlement termination of the custodial contract are reported in detail in the Board's decision, we note only the highlights. Two days before the election, U.S. Contractors supervisors Roddy and Beasley made comments that the Board determined were coercive. Similarly, the day before the election U.S. Contractors President Monical made a speech to the employees that both the Administrative Law Judge and the Board determined was coercive. The Board determined that these

utterances were individually and collectively coercive because they threatened employees with job losses as a consequence of selecting the Union as their bargaining representative. In spite of these statements, the custodial employees voted thirty five to four for Union representation on December 28, 1978. On January 19, 1979, U.S. Contractors and the Union settled the section 8(a)(1) charges. The Regional Director of the Board approved the settlement agreement and withdrew the complaint on January 23, 1979.

Events leading to the discontinuation of the custodial services, which are broadly categorized as postsettlement conduct, began on January 18 when U.S. Contractors requested a 14.4% retroactive compensation increase because of higher operating costs. Although Dow granted the increase prospectively on January 30, it began looking for less expensive alternative services and replaced a six-person crew on February 1. Rather than reinstating the U.S. Contractors crew and making the rate increase retroactive, Dow further expanded its use of J & L Janitorial Services, the alternative custodial service. Without the retroactive pay increase and without a full work load, U.S. Contractors concluded that they could no longer afford to continue the custodial operation. When informed on February 14 of U.S. Contractors' decision to dissolve the custodial operations, the Union responded that "there's nothing further to discuss." The U.S. Contractors-Dow custodial relationship was reduced throughout late February and early March until it ceased on March 17, 1979.

On March 6, 1979, the Union filed a charge alleging that Dow and U.S. Contractors violated sections 8(a)(1), (3), and (5) of the Act by supervisor's coercive statements and the termination of the custodial services. The Board issued a complaint on July 2 that was tried before the Administrative Law Judge on November 27–30. All parties filed exceptions and the Board dismissed in part, reversed in part, and upheld

---

**3.** Both the Administrative Law Judge and the Board found that U.S. Contractors and Dow were not joint employers, but that U.S. Contractors was an independent contractor.

in part the decision and order of the Administrative Law Judge. The Union and U.S. Contractors petitioned for review of the Board's decision and order, while the Board cross-applied for enforcement.

■ The Union and U.S. Contractors contend that portions of the Board's decision are not supported by substantial evidence. This circuit has repeatedly recognized that deference will be given to the Board's findings, if they are reasonable and supported by substantial evidence from the record considered as a whole. *E.g., TRW, Inc. v. NLRB,* 654 F.2d 307, 310 (5th Cir.1981). While our examination of the evidence and findings will be more critical where the Board has reversed the decision of the Administrative Law Judge than if the two were in agreement, *Berry Schools v. NLRB,* 653 F.2d 966 (5th Cir.1981), the standard for review remains the same. *NLRB v. Beckham, Inc.,* 564 F.2d 190 (5th Cir.1977). Although we might have reached different results had we decided the case de novo, the record provides ample evidence supporting the Board's findings. Consequently, we do not disturb the Board's findings.

This leaves for consideration the contention of U.S. Contractors that the Board was precluded from basing violations upon those findings. U.S. Contractors argues that absent an exception, the settlement agreement approved by the Regional Director bars further litigation of any presettlement conduct. The Board argues, however, that the presettlement conduct is not barred because there was no reason for the general counsel to know of the campaign threats until the Union filed a charge in February. We agree with U.S. Contractors that the Board failed to fall within an exception to the general rule that binds the Board to settlement agreements to which it is a party.

■ Voluntary settlement agreements of labor disputes are encouraged by the Board to ensure enforcement of the Act and to prevent inefficient consumption of Board resources. *See George Ryan Co. v. NLRB,* 609 F.2d 1249, 1252 (7th Cir.1979); *NLRB v. Bangor Plastics, Inc.,* 392 F.2d 772, 775 (6th Cir.1967). The Board, however, acts in the public interest by enforcing public, not private rights, and "parties cannot by contractual agreement divest the Board's function to operate in the public interest." *Gulf States Manufacturers, Inc. v. NLRB,* 598 F.2d 896, 901 (5th Cir.1979) (quoting *Boire v. International Brotherhood of Teamsters,* 479 F.2d 778, 803 (5th Cir.1973)). While private parties might conclude that it is in their best interest to settle a charge, the Regional Director could conclude that the public interest would be better served by a formal resolution of the dispute and thus would be under a public duty not to approve the settlement. See 29 C.F.R. §§ 101.7, .9 (1982) (covering settlement procedures). Accordingly, the Board will only be bound by settlement agreements to which it is a party. *Southwestern Bell Telephone Co. v. NLRB,* 667 F.2d 470, 476 (5th Cir.1982). Nevertheless, a settlement agreement is not an absolute bar to litigating presettlement activities. *Wallace Corp. v. NLRB,* 323 U.S. 248, 254–55, 65 S.Ct. 238, 241, 89 L.Ed. 216 (1944).

In *Wallace,* the Supreme Court observed that "[the Board] has consistently gone behind [settlement] agreements . . . where subsequent events have demonstrated that efforts at adjustment have failed to accomplish their purpose, or where there has been a subsequent unfair labor practice. We think this rule adopted by the Board is appropriate to accomplish the Act's purpose with fairness to all concerned." *Id.* This holding has been interpreted to mean that "a settlement agreement can be set aside and presettlement violations found, when there has been a breach of the agreement, or when there has been a subsequent independent violation of the Act by a party to the agreement." *Southwestern Bell,* 667 F.2d at 475; *Gulf States Manufacturers, Inc. v. NLRB,* 579 F.2d 1298 at 1306–07 (5th Cir.); *NLRB v. Southeastern Stages, Inc.,* 423 F.2d 878, 880 (5th Cir.1970). Since there has been no assertion that U.S. Contractors breached the settlement agreement, we focus on whether U.S. Contractors committed an independent violation after

the approval of the agreement that would justify going behind the agreement. *See Lincoln Bearing Co. v. NLRB,* 311 F.2d 48, 50 (6th Cir.1962). With respect to postsettlement conduct, the Board found that "Respondent USC did not violate Section 8(a)(5), (3), and (1) of the Act by discontinuing its custodial operation and laying off its custodial work force." 257 N.L.R.B. at 1182. As we indicated earlier, the record contains substantial evidence to support this finding and we do not disturb it. Since U.S. Contractors neither breached the agreement nor committed subsequent independent violations, the Board has failed to demonstrate either exception recognized by this circuit for using presettlement conduct as the basis for an unfair labor violation.

Nevertheless, the Board argues that litigation of the conduct is appropriate because it was "unknown to the General Counsel or not readily discoverable through investigation." *Chauffeurs, Teamsters and Helpers Local Union 215,* 251 N.L.R.B. 1234, 1234 (1980). We note, however, that this principle was formulated somewhat differently in *Steves Sash & Door Co.,* in which the Board stated, "separate litigation of roughly concurrent alleged violations has been held proper where the violations alleged in the second case 'occurred after the complaint issued in the earlier case, were not known to the General Counsel at the time of the earlier hearings, were independent acts, *and* were not the type of alleged violation commonly known or readily discoverable, even after an exhaustive investigation.'" *Steves Sash & Door Co.,* 164 N.L.R.B. 468, 473 (1967), *enforced as modified in other respects,* 401 F.2d 676 (5th Cir.1968) (emphasis added) (quoting *Neuhoff Brothers Packers, Inc.,* 159 N.L.R.B. 1710, 1711 n. 1 (1966)). In the instant case, all conduct that served as the basis for the U.S. Contractors 8(a)(1) violation occurred before January 2, 1979, the date the first complaint was issued. Although the conduct occurred after the Union filed its charges and amended charges, the Board's investigation was not shackled by the limited charges. As we have observed, "the Board has considerable leeway to found a complaint on events other than those specifically set forth in the charge, the only limitation being that the Board may not get so completely ... outside the charge that it may be said to be initiating the proceeding on its own motion." *NLRB v. International Union of Operating Engineers, Local 925, AFL–CIO,* 460 F.2d 589, 596 (5th Cir.1972) (citing *Texas Industries, Inc. v. NLRB,* 336 F.2d 128, 132 (5th Cir.1964)). Consequently, the inquiry shifts to what the general counsel should have known after an exhaustive investigation. The Board contends that there was no reason for the general counsel to know of the campaign conduct because the Union did not file charges specifically concerning this conduct until March, almost two months after the settlement agreement. The Board has addressed this contention in *Hollywood Roosevelt Hotel Co.,* when it stated that "the mere fact that the charge filed after the agreement was negotiated does not *ipso facto* establish that the General Counsel was unaware of Respondent's [conduct] which was the subject of the charge. Indeed, inasmuch as this conduct (which ... was known to [the charging party]) occurred prior to issuance of the complaint ... and there is no indication that evidence as to this issue was unavailable to the Regional Office during its investigation of the charge in that case, we cannot agree ... that the record established that the General Counsel was unaware of the additional violation." *Hollywood Roosevelt Hotel Co.,* 235 N.L.R.B. 1397, 1397 n. 5 (1978). This observation is apropos to this case. For example, the speech by U.S. Contractors President Monical, which served as a basis for the 8(a)(1) violation, was tape recorded by Carlson, a U.S. Contractors' employee. Not only did the general counsel introduce that tape at the hearing, Carlson testified that she informed an attorney from the Board about the campaign conduct. If the conduct was not known by the general counsel prior to the issuance of the complaint, it is hardly the type that would not be "readily discoverable, even after an exhaustive investigation." For these reasons we hold that the Board failed to meet

the requisites of the *Steves Sash & Door* exception.[4] Since the Board demonstrated no exception to the general bar, we reverse the decision and deny enforcement of the order with respect to the finding of a section 8(a)(1) violation by U.S. Contractors that was based on presettlement conduct.

Therefore, the Union petition for review is DENIED, the U.S. Contractors petition for review is GRANTED, and the Board cross-application for enforcement against U.S. Contractors is DENIED.