## ASOCIACION HOSPITAL DEL MAESTRO, INC., Petitioner,

v.

## NATIONAL LABOR RELATIONS BOARD, Respondent.

### No. 87–1476.

United States Court of Appeals,
First Circuit.

Heard Dec. 7, 1987.

Decided March 30, 1988.

Roberto E. Vega–Pacheco with whom Roberto O. Maldonado Nieves and Cancio, Nadal & Rivera, Hato Rey, P.R., were on brief, for petitioner.

Howard E. Perlstein, Supervisory Atty., with whom Harriet Lipkin, Rosemary M. Collyer, General Counsel, John E. Higgins, Jr., Deputy General Counsel, Robert E. Allen, Associate General Counsel, and Aileen A. Armstrong, Deputy Associate General Counsel, Washington, D.C., were on brief, for respondent.

Before BOWNES and SELYA, Circuit Judges, and LAFFITTE,[*] District Judge.

LAFFITTE, District Judge.

The petitioner, Asociación Hospital del Maestro, Inc. ("the hospital") seeks review of a National Labor Relations Board order that found the hospital in violation of Sections 8(a)(1) and (3) of the Labor Management Relations Act ("the Act"), 29 U.S.C. sect. 158(a)(1), (3), by promulgating and enforcing a rule prohibiting its employees from wearing union insignia in all places and at all times, and by suspending 96 employees and discharging another for re-

---

[*] Of the District of Puerto Rico, sitting by designation.

fusing to comply with such a broad rule. The Board has filed a cross-application for enforcement. We deny review and grant the Board's request for enforcement.

Briefly summarizing the undisputed facts, the labor organization at the heart of the case is Local 2, which represented 180 licensed practical nurses (LPNs), nurse's aides, and escorts working for the hospital.[1] Local 2 was affiliated with the Confederación Obrera Puertorriqueña (Puerto Rican Labor Confederation, hereinafter referred to as "Confederación"). In July 1985, however, Hospital Workers' Union Local 1199 petitioned the Board for certification as the representative of the employees who were being represented by Local 2. In mid-September 1985, ostensibly for reasons of efficiency unrelated to the brewing representation dispute, the hospital informed the president of the Confederación that it intended to replace all of the LPNs with registered nurses. At the end of September a large number of employees represented by Local 2 commenced wearing black, four inch long ribbons on their uniforms. A handbill on Local 1199's letterhead also appeared, criticizing the president of the Confederación, and declaring that the ribbons were a symbol of union solidarity. By October 9 the black ribbons had been exchanged for Local 1199 buttons and/or six inch long red ribbons which bore the words "Protesta por Despido" ("Protest for Discharge"). The hospital reacted on October 11 by sending a letter to all employees wearing ribbons warning that the ribbons violated hospital policy and that failure to comply with the policy could lead to severe disciplinary action. In addition, the Nursing Director held meetings with many employees in Local 2 wherein he conveyed a similar message. On October 14, 96 employees from the Local 2 unit affixed red ribbons to their uniforms. When they refused to remove the ribbons, they were suspended without pay until such time as the ribbons were removed. On October 17 all of the suspended employees returned to work, without wearing the ribbons.

Over a month later nurse's aide and member of Local 2 Heibert Rojas Hernández pinned a red ribbon on his uniform in protest over the discharge of two unit employees for absenteeism and over the accelerated lay off of a group of LPNs. When he refused to take the ribbon off, he was terminated. The unfair labor practice charges ensued.

The Board ruled that the hospital had violated section 8(a)(1) of the Act, 29 U.S.C. sect. 158(a)(1), by promulgating, maintaining, and enforcing an overly broad rule blanketly prohibiting its employees from wearing union insignia in all areas of the hospital. The Board also found that the hospital committed unfair labor practices in violation of Section 8(a)(3) of the Act, 29 U.S.C. sect. 158(a)(3), by suspending 96 employees for refusing to doff union insignia, by conditioning recall upon not donning the insignia, and by discharging employee Rojas for wearing the insignia. The Board ordered the hospital to cease and desist from committing unfair labor practices, to reinstate Rojas, and to make him and the other 96 suspended employees whole for losses in wages and other benefits suffered during their suspensions. The Board ordered the hospital to rescind the rule governing the insignia "to the extent that it prohibits employees from wearing union insignia on their uniforms, outside immediate patient care areas, or outside other specifically identified areas where the wearing of union insignia would adversely affect patient care."

The essence of the Board's decision was that the hospital's anti-insignia regulation was overbroad. The hospital, the Board concluded, was not justified in prohibiting the wearing of protest ribbons and union buttons in nonpatient-care areas. The newly arisen problems associated with the insignia, which the Board determined justified promulgation of a limited anti-insignia rule where none had been,[2] were for the

---

1. The hospital's 700 employees are organized in seven bargaining units.

2. The hospital's contention that it had merely "invoked" the longstanding broad, anti-insignia rule rather than promulgated it as a new rule was found by the Board, supportably, we think,

most part confined to patient-care areas. The Board found that patients had expressed apprehension and other opinions concerning the future quality of care in the face of a labor dispute made known to them primarily through the wearing of the ribbons by hospital personnel. In an apparent gesture of sympathy with the union, one patient had a ribbon pinned to his bedclothes. A unit employee who refused to don a ribbon received an anonymous note ridiculing her.

▇▇▇▇ Generally, employees have the right to wear union-related insignia. The burden is on the employer to demonstrate that a rule restricting such insignia is necessary under the circumstances. Recognizing the special position of hospitals and the delicate patient services they provide, however, the Supreme Court has held that proscriptions against the wearing of union insignia in "immediate patient care areas" are not presumptively invalid. *Beth Israel Hospital v. NLRB*, 437 U.S. 483, 98 S.Ct. 2463, 57 L.Ed.2d 370 (1978). A hospital "may be justified in imposing somewhat more stringent prohibitions than are generally permitted" with respect to union activity on the hospital's premises. *Id.* at 495, 98 S.Ct. at 2470. This is so because of the need to "accommodate the special need of patients for a tranquil environment." *Eastern Maine Medical Center v. NLRB*, 658 F.2d 1, 4 (1st Cir.1981). Yet, if proscriptions apply to areas other than those associated with immediate patient care, the burden is on the hospital to show that insignia worn only in those areas would still disrupt patient care or disturb patients. *NLRB v. Baptist Hospital, Inc.*, 442 U.S. 773, 99 S.Ct. 2598, 61 L.Ed.2d 251 (1979). There is substantial evidence in the record lending support to the Board's finding that the hospital failed to meet this burden.

Referring only vaguely to "special circumstances" justifying broad prohibition of union insignia, the hospital does not identify the specific threat to patient care that wearing union insignia in nonpatient-care areas posed. The hospital merely argues that there were problems and that the rule was implemented to solve those problems. It makes no attempt to refute the overbreadth holding of the Board. Given the hospital's failure to identify specific threats to patient care that the wearing of union insignia in nonpatient-care areas posed, and the finding that general, widespread discord and perhaps violence were not imminent such that a total ban on insignias would have been justified, the Board's finding that the hospital had committed an unfair labor practice by promulgating an invalid rule finds support in the record. Where substantial evidence supports the Board's finding that the hospital "failed to justify its ban," this Court will uphold the Board's conclusion that the ban is unlawful and therefore unenforceable for all purposes. *Eastern Maine Medical Center* at 5. The record supports the Board's finding that the hospital presented sufficient evidence of patient anxiety and employee friction to justify a ban on union insignia limited to *certain times and places* in the hospital, but insufficient evidence to justify the ban on the wearing of union insignia *at all places and at all times.*

Having determined that the rule was invalid and its promulgation an unfair labor practice, the Board logically concluded that all disciplinary actions taken against the 96 suspended employees under authority of the unlawful rule also constituted unfair labor practices. This includes the discharge of nurse's aide Rojas Hernández, even if he had been in patient areas during the short period he wore a ribbon before being discharged. *See Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945); *NLRB v. St. Vincent's Hosp.*, 729 F.2d 730 (11th Cir.1984).[3]

not to comport with the written uniform regulations which were aimed primarily at style. Moreover, the evidence indicated that in the past employees wore buttons, pins, and ribbons on their uniforms, including political and union buttons, a pin resembling the Puerto Rican flag and various seasonal pins, without confrontation or mishap.

**3.** We note that, in any event, Rojas seems not to have been in a patient-care area when his supervisor asked him to remove the ribbon or when the personnel director ordered him to "punch

578

The overbroad rule is invalid in all its applications, even to those situations which a more narrowly drawn rule could legitimately control.

■ Finally, the hospital contends that the Board erred in not deferring the unfair labor practices to arbitration. The collective bargaining agreement between the parties had expired on April 8, 1985. The grievance arose six months after contract expiration. The hospital argues that the expiration of the labor contract is not a bar to arbitration given its stated willingness to waive all substantive and procedural arbitrability defenses of the controversy under the doctrine of *Collyer Insulated Wire*, 192 N.L.R.B. 837 (1971), and *United Technologies Corp.*, 268 N.L.R.B. 557 (1984). It is unnecessary to delve into the continued vitality of an expired contract as a vehicle permitting arbitration, *Nolde Brothers v. Local No. 38, Bakery and Confectionary Workers Union*, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977), because of the controlling fact that the parties failed to submit in evidence the expired collective bargaining agreement or its terms, if any, relating to arbitration. The existence of a collective bargaining agreement establishing grievance procedures culminating in final and binding arbitration is a precondition to deferral. *Pioneer Finishing Corp. v. NLRB*, 667 F.2d 199 (1st Cir.1981); *Atlas Tack Corp.*, 226 N.L.R.B. 222 (1976), *enforced* 559 F.2d 1201 (1st Cir.1977); *Collyer Insulated Wire*, 192 N.L.R.B. 837 (1971). *See generally*, 22 Fed.Proc., L.Ed. sect. 52:968 (1984); 1 *The Developing Labor Law* at 939-40 (C.J. Morris 2d. ed. 1983). Because the hospital has not shown that the unfair labor practices are cognizable under a grievance procedure or fall within the scope of matters that are arbitrable under a collective bargaining agreement, there is no basis for deferral.

Accordingly, Asociación Hospital del Maestro's petition for review is DENIED.

out" for wearing it. More importantly, he was instructed that he had to remove the ribbon

The Board's request for enforcement is GRANTED.

entirely—not merely that he could not wear it in a patient-care area.