**CATERPILLAR TRACTOR CO., a corporation, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 11560.**

United States Court of Appeals
Seventh Circuit.

March 2, 1956.

George B. Christensen, Chicago, Ill., Winston, Strawn, Black & Towner, Chicago, Ill., of counsel, Fred H. Daugherty, David C. Keegan, Chicago, Ill., for petitioner.

David P. Findling, Associate General Counsel, Norton J. Come, Attorney, N.L.R.B., Washington, D. C., Theophil C. Kammholz, General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Louis Schwartz, Attorneys, National Labor Relations Board, Washington, D. C., for respondent.

Before LINDLEY, SWAIM, and SCHNACKENBERG, Circuit Judges.

LINDLEY, Circuit Judge.

Caterpillar Tractor Company seeks to set aside an order entered by the Board based on the latter's finding that petitioner had violated subsections 8(a) (1) and (3) of the National Labor Relations

Act, as amended, 29 U.S.C.A. § 158(a) (1) and (3). The facts are not in dispute; the sole controversy is as to their legal effect.

District Lodge No. 55, International Association of Machinists, AFL, hereinafter referred to as the union, is the certified bargaining agent for petitioner's production employees at its plant in Joliet, Illinois. In February 1954, approximately 1,450 of the some 1,900 employees in the bargaining unit were members of the union. For an extended period of time, the relations between the employer and the union had been entirely amicable and cooperative. During February the union began a membership drive. For this purpose, 1,000 advertising slogan buttons were distributed to its members, 250 of which were emblazoned with the slogan "Don't be a Scab." The others bore such legends as "Don't be a Free Rider." The "Scab" buttons were first worn in the shop on February 24. Petitioner did not demur to the use of other buttons but advised the union's business agent that it objected to the "Scab" emblems being worn in the shop, because of their tendency to incite unrest and resentment among union and nonunion employees and to disturb the peaceful, friendly atmosphere which had continued between petitioner and the union for a number of years. Despite this protest, wearing of the "Scab" buttons continued throughout the remainder of the week. On Friday, February 26, the employer advised all such wearers that they would be sent home if they returned to work the next working day wearing the buttons. On March 1, the next working day, 247 employees reported for work wearing the offensive badge and were sent home. On the same day, the union agreed to suppress the emblem pending the Board's decision on unfair labor charges based on petitioner's suspension of these employees. On March 2, all employees returned to work without the objectionable buttons, and that status has since prevailed.

The Board concluded that wearing the button during working hours was a pro-

tected activity within the purview of Section 7 of the Act, and, that, by suspending the 247 employees for wearing it in the work shop, petitioner violated § 8(a) (1) and (3) of the Act. A cease and desist order was entered, which required, *inter alia*, reimbursement for the time lost to the suspended employees. 113 N.L.R.B. No. 37. Member Rodgers filed a vigorous dissenting opinion.

We are convinced that the Board erroneously interpreted Section 7 and that its order must be set aside. The fine balance between protected and unprotected activities in membership solicitation is pointed up by the Supreme Court in Republic Aviation Corporation v. N.L.R.B., 324 U.S. 793, 797–798, 65 S.Ct. 982, 985, 89 L.Ed. 1372: "These cases bring here for review the action of the National Labor Relations Board in working out an adjustment between the undisputed right of self-organization assured to employees under the Wagner Act and the equally undisputed right of employers to maintain discipline in their establishments. Like so many others, these rights are not unlimited in the sense that they can be exercised without regard to any duty which the existence of rights in others may place upon employer or employee. Opportunity to organize and proper discipline are both essential elements in a balanced society."

Thus, in its application to organizational activities, the protective mantle of Section 7 is tempered by the employer's right to exact a day's work for a day's pay and to maintain discipline, and does not reach activities which inherently carry with them a tendency toward, or likelihood of, disturbing efficient operation of the employer's business. Perhaps no greater disruptive force can be found in the field of labor relations than that innate in the application of the term "scab" to one employee by his fellow workman. The term, when applied to one embraced in a labor group, bears an inescapable connotation of opprobiousness and vileness commonly recognized by all members of modern Amer-

ican society. As we said, in N.L.R.B. v. Aintree Corp., 7 Cir., 135 F.2d 395, 397, "Probably no words are more insulting to, or arouse keen resentment more promptly in, an employee than to call him 'a scab.'" See Member Rodgers Dissent, 113 N.L.R.B. No. 37.

We are of the opinion that petitioner's anticipation that the "Scab" buttons would prove disruptive of employee harmony in its plant and destructive of discipline in production was fully justified. It was under no compulsion to wait until resentment piled up and the storm broke before it could suppress the threat of disruption by exercising its right to enforce employee discipline. Although the union, on March 1, after the event, distributed literature to all employees protesting, in effect, that it used the term "scab" as synonymous with that of "free rider", its inarticulateness in the use of specific words on the button did not in any way serve to lessen petitioner's legitimate concern over the universally recognized explosive nature of the ill-chosen word.

In view of the zealous argument advanced by petitioner, we think it wise, perhaps, to negate the erroneous position which we understand it takes that it could properly have prohibited any organizational activity on company time, and might, also, have forbidden the wearing of the other slogan buttons employed in the union's campaign. We think its right in this respect is limited to the restriction of activities which disrupt, or tend to disrupt, production and to break down employee discipline, and does not include restriction of passive inoffensive advertisement of organizational aims and interests, i. e., the wearing of advertising insignia and buttons, which in no way interferes with discipline or efficient production. Cf. Republic Aviation Corporation v. N.L.R.B., 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372. The "Scab" insignia falls because of its inherent disruptive influence.

The order is set aside.