CATERPILLAR, INC., Plaintiff-Appellee, v. JAMES G. FEHRENBACHER, Defendant-Appellant (Lynn Q. Doherty, Director of the Department of Employment Security, *et al.*, Defendants).

Second District   No. 2—96—0128

Opinion filed February 19, 1997.

Harold A. Katz, Stanley Eisenstein, Lynn L. Miller, and Jane Bohman, all of Katz, Friedman, Schur & Eagle, of Chicago, for appellant.

Gerald C. Peterson, Joseph J. Torres, Derek G. Barella, and Columbus R. Gangemi, Jr., all of Winston & Strawn, of Chicago, for appellee.

JUSTICE RATHJE delivered the opinion of the court:

In October 1993, plaintiff, Caterpillar, Inc., fired defendant, James Fehrenbacher (defendant), for violating a rule against displaying the term "scab" on company property. Defendant applied for unemployment benefits. Plaintiff argued that, under section 602(A) of the Unemployment Insurance Act (section 602(A)) (820 ILCS 405/602(A) (West 1992)), defendant was not entitled to benefits because he was discharged for "misconduct."

After an administrative hearing, a referee of the defendant Illinois Department of Employment Security (Department) agreed with plaintiff and affirmed the local office's denial of benefits. The Department's Board of Review (Board) reversed and awarded benefits. Plaintiff appealed, and the circuit court reversed the Board. Defendant appeals. He argues that the court erred in holding that section 602(A) bars his receipt of benefits, as (1) the rule he broke was not reasonable; and (2) his disobedience was not misconduct because it resulted from his reasonable good-faith belief that he had a legal right to display the sign.

■ As pertinent here, section 602(A) states:

"A. An individual shall be ineligible for benefits for the week in which he has been discharged for *misconduct connected with his work* and, thereafter, until he has become reemployed ***. *** For purposes of this subsection, the term 'misconduct' means the deliberate and willful violation of a *reasonable rule or policy of the employing unit, governing the individual's behavior in performance of his work*, provided such violation has harmed the employing unit *** or has been repeated by the individual despite a warning or other explicit instruction from the employing unit." (Emphasis added.) 820 ILCS 405/602(A) (West 1992).

We set out the procedural history of this case, incorporating the evidence of the events that preceded defendant's firing. Defendant's application for unemployment insurance stated that he was fired because he refused to remove a sign from the window of his truck, which he parked in the company parking lot. The sign read, "Support S—55 Stop Scabs From Taking Union Jobs." S—55 was proposed legislation to bar hiring permanent replacements for striking union workers. As an employee of plaintiff, defendant belonged to Local 145 of the International Union, United Automobile, Aerospace & Agricultural Implement Workers of America (UAW or the union).

Defendant placed the sign in his truck on October 5, 1993. On October 21, 1993, and October 22, 1993, his foreman asked him to remove the sign. Defendant refused and was discharged on October 22, 1993. According to defendant's application for benefits, he believed he should not have been fired because "I fel [*sic*] I have the Right to support the Bill S—55."

Plaintiff protested the benefits application, agreeing with defendant's account of his firing but asserting that defendant was discharged for misconduct. The Department's local office agreed. Defendant moved to reconsider, arguing that merely placing a sign in his truck in the parking lot could not be equated with forbidden behavior in the workplace. He explained that, at the time of the incident, his union was working without a contract, and plaintiff had planned "to replace us with scab labor so I [thought] Bill S 55 is important [*sic*] to save are [*sic*] jobs." After the claims adjudicator rejected his motion, defendant sought review by the Department's appeals division.

On December 22, 1993, the appeals division heard evidence on defendant's claim. The hearing was taped, but, owing to faulty equipment, part of the evidence was not recorded. Apparently, most of this missing evidence came from plaintiff's two witnesses. We summarize the surviving evidence and arguments.

Ken Docett, plaintiff's supervisor, told the referee that plaintiff's parking lot is separated from its plant by a lane or road; a worker exiting the plant must pass through a gate to get to his car. Docett admitted that the sign in defendant's vehicle window included a reference to S—55 as well as "Stop Scabs From Taking Union Jobs." However, Docett maintained that "Support S—55" was "so small you can't [*sic*] hardly see it." The referee also examined several copies of photographs of defendant's truck.

Defendant testified that, on October 5, 1993, he placed the sign in his truck to demonstrate his support for S—55. He never took the sign with him into the workplace. From then on, he performed his work as a lathe operator no differently from before. When he placed the sign in his car, he knew plaintiff banned the display on its property of any sign saying "Stop Scabs." On October 21 and October 22, Docett told defendant to remove the sign from company property, but defendant refused. Plaintiff suspended defendant and held a disciplinary hearing at which defendant was advised that if he removed the sign he would be reinstated. Defendant refused the offer and was fired.

The administrative hearing proceeded to closing arguments. Plaintiff's counsel observed that defendant admitted that, despite several warnings, he persisted in violating the company rule against "Stop Scabs" signs. Furthermore, counsel asserted, the National Labor Relations Board (NLRB) ruled in March 1993 that plaintiff's ban on such displays was not an unfair labor practice because workers who crossed the picket line during the recent bitter strike had faced coercion, intimidation, and harassment from the union. Counsel added that, after the strike, some union employees still were harassing some co-workers. Finally, counsel observed that, a few months earlier, the appeals division affirmed the denial of unemployment benefits to a worker who was fired because his vehicle displayed a banner reading "NO CONTRACT STOP SCABS NO PEACE." See *Rudolph Gerhardt*, Ill. Dep't Empl. Sec. No. AR. 3037628(A) (September 15, 1993) (*Gerhardt*). The record includes copies of *Gerhardt* and a letter, from the NLRB to counsel for the UAW, explaining the agency's approval of the rule.

In reply, defendant's counsel argued that plaintiff's rule and defendant's violation thereof did not relate to defendant's work, which was unaffected by what he may have put in his truck outside the plant. Thus, according to his counsel, defendant was not fired for misconduct "connected with his work" or for violating a rule "governing the individual's behavior in performance of his work" (820 ILCS 405/602(A) (West 1992)). Also, counsel noted that plaintiff had not al-

leged that defendant's sign provoked any incidents or that defendant had ever harassed anyone who crossed the union's picket line. Finally, counsel asserted that denying defendant unemployment benefits because he expressed a political opinion violated his first amendment rights.

The referee found that defendant knowingly and repeatedly violated plaintiff's ban on "No Scabs" signs. The referee rejected defendant's first amendment argument, observing that defendant cited no authority that the denial of unemployment benefits converted plaintiff's restriction on speech into state action.

Defendant appealed. On April 1, 1994, the Board remanded the matter for a new hearing because the incomplete transcript of the hearing frustrated proper review of the decision. On remand, however, the parties did not present any evidence but stipulated to the facts "obtained in [the referee's] previous decision" from the December 22, 1993, hearing.

Defendant made further arguments for reversing the denial of benefits. He observed that, in January 1994, the NLRB's regional counsel brought a complaint against plaintiff, alleging that the company's actions against Gerhardt and two other workers (Arendt and Kolzow) who displayed "Stop Scabs" signs amounted to an unfair labor practice. Furthermore, the NLRB filed a similar complaint on defendant's behalf. Finally, the Board had just reversed the referee's decision in *Gerhardt*. See *Janet E. Kolzow*, Bd. of Review, Ill. Dep't of Empl. Sec. No. ABR—93—15346 (July 29, 1994) (*Kolzow*). (Defendant submitted copies of these complaints and of the Board's decision.) From this, defendant argued that plaintiff could no longer maintain that its rule against "No Scabs" signs was reasonable.

The referee disagreed, explaining that he was not bound by the NLRB's complaint. In May 1994, the referee rejected defendant's request for a rehearing so that he could introduce more evidence that plaintiff's rule was unreasonable. The referee affirmed the denial of benefits, and defendant appealed to the Board.

The Board reversed the referee's decision, holding that defendant's action was not misconduct. The Board relied on *Kolzow*, in which it decided that the claimant was not guilty of misconduct when she wore a "No Scabs" button on the job at plaintiff's plant. The Board acknowledged that a 1956 federal appellate decision upheld plaintiff's authority to ban the display of the term "scab" in the workplace. See *Caterpillar Tractor Co. v. National Labor Relations Board*, 230 F.2d 357 (7th Cir. 1956). However, according to the Board, this decision was now "superseded" by the complaint the NLRB brought against plaintiff in January 1994. Thus, the Board overruled

*Gerhardt.* Applying *Kolzow*, it ruled that defendant's display of the sign was not misconduct; therefore, he was entitled to unemployment benefits.

Plaintiff appealed to the circuit court. On cross-motions for summary judgment, the court reversed the Board and held that defendant must be denied benefits because he was fired for misconduct. The court could not accept the Board's premise that *Caterpillar Tractor* had been "superseded" by the NLRB's complaint against plaintiff. As *Caterpillar Tractor* controlled, defendant was properly discharged for violating a reasonable rule, and he could not collect benefits. The court granted plaintiff summary judgment. Defendant appealed.

Defendant argues that the circuit court erred in reversing the Board because (1) the Board properly found that he was not guilty of misconduct; and (2) in any event, he is entitled to benefits because he acted in the reasonable good-faith belief that he had a legal right to display his sign. Although we cannot accept the Board's reasoning, we believe it properly found that defendant's peaceful display of the sign outside the workplace was not misconduct. Therefore, we reverse the circuit court without considering defendant's "good-faith" argument.

■ On review of an administrative agency's decision, a court determines only whether the agency's decision is against the manifest weight of the evidence or legally erroneous. *Hoffmann v. Lyon Metal Products, Inc.*, 217 Ill. App. 3d 490, 497 (1991); *Adams v. Ward*, 206 Ill. App. 3d 719, 723 (1990). However, the reviewing court need not give the same deference to the agency's conclusions of law, such as the construction of a statute, as it must give to the agency's factual findings. *Adams*, 206 Ill. App. 3d at 723.

We agree with the circuit court and plaintiff that the Board erred in using the NLRB's complaint against plaintiff as authority here. Apparently, the Board believed that the NLRB's challenge to plaintiff's ban on "No Scabs" signs overrode a federal court's finding that the policy is reasonable. Thus, in the Board's view, as federal law now outlaws plaintiff's policy, defendant's violation thereof cannot be "misconduct" because misconduct includes only violations of *reasonable* work rules. See 820 ILCS 405/602(A) (West 1992).

The Board's reasoning is plainly unsound. If *Caterpillar Tractor* is good law, it cannot be "overruled" by an NLRB ruling—much less by the mere filing of a complaint by a regional office of the NLRB's prosecutorial arm. As an administrative agency, the NLRB is bound by applicable judicial interpretations of the controlling law. *Mary Thompson Hospital, Inc. v. National Labor Relations Board*, 621 F.2d 858, 863-64 (7th Cir. 1980); *Allegheny General Hospital v. National*

*Labor Relations Board,* 608 F.2d 965, 969-71 (3d Cir. 1979). The Board inexplicably slighted this elementary principle. Thus, if plaintiff's rule is unreasonable, it cannot be so on the ground on which the Board relied.

Defendant urges that the rule is unreasonable and that *Caterpillar Tractor* does not dictate otherwise. He also maintains that case law since *Caterpillar Tractor* casts doubt on the legality of plaintiff's flat ban on the display of the "s-word" anywhere on its property. We agree with defendant that *Caterpillar Tractor* does not control and that its vitality is dubious.

In *Caterpillar Tractor*, about 250 of plaintiff's employees, while on the shop floor, wore buttons saying "Don't be a Scab." When they persisted in wearing the buttons during work hours, plaintiff sent them home. The appellate court held that the employees' behavior was not protected by federal law because the employer's right to maintain discipline included the power to curb activities tending to disrupt the efficient operation of the business. Declaring that "[p]erhaps no greater disruptive force can be found in the field of labor relations than that innate in the application of the term 'scab' to one employee by his fellow workman" (*Caterpillar Tractor*, 230 F.2d at 358), the court concluded that the ban was valid because plaintiff justifiably anticipated the buttons would "prove disruptive of employee harmony *in its plant* and destructive of discipline *in production*" (emphasis added) (*Caterpillar Tractor*, 230 F.2d at 359). The court cautioned it was not holding that an employer could prohibit displays that did not interfere with discipline or efficiency. *Caterpillar Tractor*, 230 F.2d at 359.

Unlike defendant here, the employees in *Caterpillar Tractor* displayed their signs in the workplace itself, not merely on company property, while they and other employees were working. From the language we have quoted and emphasized, it appears the court placed great weight on this fact. The relationship between displays and disruptions in production is likely greatest when the displays occur at the same time and place as the production, and a ban on controversial signs that is proper if limited to the workplace may be improper if applicable to all company property.

Thus, in *Asociacion Hospital Del Maestro, Inc. v. National Labor Relations Board,* 842 F.2d 575, 577-78 (1st Cir. 1988), the court wholly invalidated the employer's ban on union insignia anywhere on its property. The court struck down the rule even though it would have been proper had it been limited to immediate patient care areas.

In *National Labor Relations Board v. Pratt & Whitney Air Craft Division, United Technologies Corp.,* 789 F.2d 121 (2d Cir. 1986), the

union conducted a membership drive in which it distributed literature calling nonunion workers "scabs" and "freebies" and quoting Jack London's (unfavorable) comparison of such people to rattlesnakes and vampires. The union also posted lists of nonunion workers employed at the plant. In response, the employer banned the distribution or display of such literature anywhere on company property, even outside working hours. The court held that applying the ban to nonwork areas or nonworking hours was allowable only if the employer showed special circumstances, *i.e.*, the use of words "so offensive on their face as to create a reasonable expectation that plant discipline will be disrupted" (*Pratt & Whitney,* 789 F.2d at 128) or language so provocative as to threaten plant peace or safety (*Pratt & Whitney*, 789 F.2d at 128). Taking note of recent case law (which we shall discuss shortly), the court concluded that the terminology was not facially offensive because, as courts had long recognized, epithets such as "scab" are routinely used in labor disputes and are not necessarily outside the protection of federal labor law. As the employer had not shown that the union's language was so provocative as to threaten a breach of peace in the workplace, the NLRB properly invalidated the ban. *Pratt & Whitney*, 789 F.2d at 128.

In light of this authority, we believe that *Caterpillar Tractor* is distinguishable, as it involved a restriction only on displays in the workplace during working hours. Moreover, the reasoning of *Caterpillar Tractor* has been undermined, if not repudiated, by later cases recognizing that, because labor disputes are inherently bitter affairs, strong words such as "scab" are commonplace and may be protected. See *Linn v. United Plant Guard Workers of America, Local 114*, 383 U.S. 53, 58-61, 15 L. Ed. 2d 582, 587-89, 86 S. Ct. 657, 660-62 (1966); *Pratt & Whitney*, 789 F.2d at 128. One federal appellate court has openly rejected *Caterpillar Tractor* insofar as it suggests a flat ban on displaying the term "scab" is *per se* reasonable. See *National Labor Relations Board v. Mead Corp.*, 73 F.3d 74, 79-80 (6th Cir. 1996).

The foregoing suggests that plaintiff's reliance on federal law to establish that its rule is "reasonable" under section 602(A) may be misplaced. Federal authority holds that employers' restrictions on pro-union speech require "special circumstances" and that the use of the term "scab" is not in itself a special circumstance. Thus, the wide-ranging rule at issue here might well fail a federal challenge, especially a claim of overbreadth.

■ In so saying, we agree with plaintiff's premise that the acceptability of an employer's rule under federal law is highly probative of whether the rule is "reasonable" under state law. The criteria for whether a rule is a fair labor practice, *e.g.*, its relationship to

workplace efficiency, safety, or discipline, its clarity and precision, and the extent to which it infringes on legally protected behavior, are also among the major considerations in a determination of whether it is a "reasonable" rule under section 602(A). See generally *Garner v. Department of Employment Security*, 269 Ill. App. 3d 370, 373-74 (1995); *Bochenek v. Department of Employment Security*, 169 Ill. App. 3d 507, 509 (1988); *Neville v. Board of Review of the Department of Labor*, 143 Ill. App. 3d 548, 550 (1986). Moreover, both employers and employees have a right to rely reasonably on what federal courts declare they may or may not do. The problem here is that, contrary to plaintiff's assumptions, it is far from obvious whether federal law would permit the rule at issue. Thus, we cannot accept plaintiff's assertion that federal law proves that the rule is reasonable under section 602(A).

Moreover, the incomplete record before the referee, the Board, and this court makes it impossible to determine whether plaintiff demonstrated special circumstances that would demonstrate that plaintiff's rule was reasonable to control the violence or harassment (on plaintiff's property). The lack of this evidence was the result of a technical malfunction at the original hearing before the referee. Nevertheless, after the Board remanded the matter for a new hearing because of the incomplete transcript, the parties stipulated to the "facts obtained in [the referee's] previous decision from a hearing dated 12/22/93." While plaintiff's counsel's closing argument referred specifically to breaches of peace at the plant, as did the NLRB's letter to counsel for the union, the referee's decision did not reference any facts demonstrating special circumstances in support of his conclusion that plaintiff's rule was reasonable.

■ Were conditions at plaintiff's facility as the NLRB appears to have believed, plaintiff's rule could have been found to be reasonable. However, in the absence of such facts in the record before the Board, the Board's finding that the plaintiff's rule was unreasonable is not against the manifest weight of the evidence.

Even assuming, *arguendo*, that plaintiff's rule was reasonable, we agree with the defendant that he is entitled to benefits under section 602(A) because his alleged misconduct was not "connected with his work" and that the rule did not govern his "behavior in [the] performance of his work." See 820 ILCS 405/602(A) (West 1992).

The claimant has the burden of establishing his legal right to unemployment insurance, but the statute must be construed liberally in favor of awarding benefits. *Hoffmann*, 217 Ill. App. 3d at 498; *Adams*, 206 Ill. App. 3d at 723. The case law does not appear to address a situation similar to this one. Of course, it is settled that not every

violation of a company rule is misconduct, as there must be "some nexus between the rule and the employment." *Jackson v. Board of Review of the Department of Labor*, 105 Ill. 2d 501, 512 (1985); see also *Neville*, 143 Ill. App. 3d at 550-51; *Profice v. Board of Review of the Illinois Department of Labor*, 135 Ill. App. 3d 254, 258-59 (1985). However, these cases (and the others the parties cite) involve conduct, such as on-the-job intoxication, that demonstrably had a direct effect on how the employee did her or his work. The application of the statutory language to a rule that lacks such a straightforward connection to job performance (or to the workplace) is less clear. We believe the statute is ambiguous and that benefits must be awarded in this case.

Defendant's behavior was "connected with his work" in that it took place on his employer's property, related generally to his employment and the conditions thereof, and had the reasonable potential to affect the performance of his duties. However, placing the sign in the window of his truck was not "connected with his work," in the sense that it occurred outside the actual place of work, did not relate directly to the performance of his job as a lathe operator, and had no actual direct or indirect effect on the performance of his duties (other than, of course, leading to his discharge).

Similarly, it is questionable whether the regulation as it was applied here governed defendant in the performance of his work. In some general way, almost any employer's regulation might do so. However, the rule governed defendant only in his use of the company's parking lot, which (at least under the facts here) was only an adjunct to the performance of his work. Giving section 602(A) the required liberal construction, we hold that, at least under the facts here, the rule did not govern defendant in the performance of his work.

The Board's mixed findings of law and fact that defendant was not discharged for misconduct is supported by the record submitted to the Board. Therefore, defendant is entitled to unemployment insurance benefits.

The judgment of the circuit court of Kendall County is reversed, and the decision of the Board is reinstated.

Judgment reversed; award reinstated.

GEIGER, P.J., and McLAREN, J., concur.