No. 2--96--0128

___________________________________________________________________

                              IN THE

                    APPELLATE COURT OF ILLINOIS

                         SECOND DISTRICT

___________________________________________________________________

CATERPILLAR, INC.,              )  Appeal from the Circuit Court

                                )  of Kendall County.

     Plaintiff-Appellee,        )

                                )

 v.                             )  No. 95--MR--9

                                )

                                )

JAMES G. FEHRENBACHER,          )

                                )

     Defendant-Appellant        ) 

                                )

(Lynn Q. Doherty, Director of   )

the Department of Employment    )

Security, and The Board of      )        

Review of the Department of     )  Honorable

Employment  Security,           )  James M. Wilson, 

Defendants).                    )  Judge, Presiding.  

_________________________________________________________________

                              

     JUSTICE RATHJE delivered the opinion of the court:

     In October 1993, plaintiff, Caterpillar, Inc., fired

defendant, James Fehrenbacher (defendant), for violating a rule

against displaying the term "scab" on company property.  Defendant

applied for unemployment benefits.  Plaintiff argued that, under

section 602(A) of the Unemployment Insurance Act (section 602(A))

(820 ILCS 405/602(A)(West 1992)), defendant was not entitled to

benefits because he was discharged for "misconduct."  

     After an administrative hearing, a referee of the defendant

Illinois Department of Employment Security (Department) agreed with

plaintiff and affirmed the local office's denial of benefits.   The

Department's Board of Review (Board) reversed and awarded 

benefits.  Plaintiff appealed, and the circuit court reversed the

Board.  Defendant appeals.  He argues that the court erred in

holding that section 602(A) bars his receipt of benefits, as (1)

the rule he broke was not reasonable; and (2)  his disobedience was

not misconduct because it resulted from his reasonable good-faith

belief that he had a legal right to display the sign.

     As pertinent here, section 602(A) states:

          "A.  An individual shall be ineligible for benefits for

     the week in which he has been discharged for misconduct

     connected with his work and, thereafter, until he has become

     reemployed ***.  ***  For purposes of this subsection, the

     term 'misconduct' means the deliberate and willful violation

     of a reasonable rule or policy of the employing unit,

     governing the individual's behavior in performance of his

     work, provided such violation has harmed the employing unit

     *** or has been repeated by the individual despite a warning

     or other explicit instruction from the employing unit." 

     (Emphasis added.)  820 ILCS 405/602(A) (West 1992).

     We set out the procedural history of this case, incorporating

the evidence of the events that preceded defendant's firing. 

Defendant's application for unemployment insurance stated that he

was fired because he refused to remove a sign from the window of

his truck, which he parked in the company parking lot.  The sign

read, "Support S--55 Stop Scabs From Taking Union Jobs."  S--55 was

proposed legislation to bar hiring permanent replacements for

striking union workers.  As an employee of plaintiff, defendant

belonged to Local 145 of the International Union, United

Automobile, Aerospace & Agricultural Implement Workers of America

(UAW or the union).  

     Defendant placed the sign in his truck on October 5, 1993.  On

October 21, 1993, and October 22, 1993, his foreman asked him to

remove the sign.  Defendant refused and was discharged on

October 22, 1993.  According to defendant's application for

benefits, he believed he should not have been fired because "I fel

[sic] I have the Right to support the Bill S--55."

     Plaintiff protested the benefits application, agreeing with

defendant's account of his firing but asserting that defendant was

discharged for misconduct.  The Department's local office agreed. 

Defendant moved to reconsider, arguing that merely placing a sign

in his truck in the parking lot could not be equated with forbidden

behavior in the workplace.  He explained that, at the time of the

incident, his union was working without a contract, and plaintiff

had planned "to replace us with scab labor so I [thought] Bill S 55

is inportant [sic] to save are [sic] jobs."  After the claims

adjudicator rejected his motion, defendant sought review by the

Department's appeals division.

     On December 22, 1993, the appeals division heard evidence on

defendant's claim.  The hearing was taped, but, owing to faulty

equipment, part of the evidence was not recorded.  Apparently, most

of this missing evidence came from plaintiff's two witnesses.  We

summarize the surviving evidence and arguments.  

     Ken Docett, plaintiff's supervisor, told the referee that

plaintiff's parking lot is separated from its plant by a lane or

road; a worker exiting the plant must pass through a gate to get to

his car.  Docett admitted that the sign in defendant's vehicle

window included a reference to S--55 as well as "Stop Scabs From

Taking Union Jobs."   However, Docett maintained that "Support S--

55" was "so small you can't [sic] hardly see it."  The referee also

examined several copies of photographs of defendant's truck.

     Defendant testified that, on October 5, 1993, he placed the

sign in his truck to demonstrate his support for S--55.  He never

took the sign with him into the workplace.  From then on, he

performed his work as a lathe operator no differently from before. 

When he placed the sign in his car, he knew plaintiff banned the

display on its property of any sign saying "Stop Scabs."  On

October 21 and October 22, Docett told defendant to remove the sign

from company property, but defendant refused.   Plaintiff suspended

defendant and held a disciplinary hearing at which defendant was 

advised that if he removed the sign he would be reinstated. 

Defendant refused the offer and was fired.

     The administrative hearing proceeded to closing arguments. 

Plaintiff's counsel observed that defendant admitted that, despite

several warnings, he persisted in violating the company rule

against "Stop Scabs" signs.  Furthermore, counsel asserted, the

National Labor Relations Board (NLRB) ruled in March 1993 that

plaintiff's ban on such displays was not an unfair labor practice

because workers who crossed the picket line during the recent

bitter strike had faced coercion, intimidation, and harassment from

the union.  Counsel added that, after the strike, some union

employees still were harassing some co-workers.  Finally, counsel

observed that, a few months earlier, the appeals division affirmed

the denial of unemployment benefits to a worker who was fired

because his vehicle displayed a banner reading "NO CONTRACT STOP

SCABS NO PEACE."  See Rudolph Gerhardt, Ill. Dep't Empl. Sec. No.

AR. 3037628(A) (September 15, 1993) (Gerhardt). The record includes

copies of Gerhardt and a letter, from the NLRB to counsel for the

UAW, explaining the agency's approval of the rule.

     In reply, defendant's counsel argued that plaintiff's rule and

defendant's violation thereof did not relate to defendant's work,

which was unaffected by what he may have put in his truck outside

the plant.  Thus, according to his counsel, defendant was not fired

for misconduct "connected with his work" or for violating a rule

"governing the individual's behavior in performance of his work"

(820 ILCS 405/602(A) (West 1992)).  Also, counsel noted that

plaintiff had not alleged that defendant's sign provoked any

incidents or that defendant had ever harassed anyone who crossed

the union's picket line.  Finally, counsel asserted that denying

defendant unemployment benefits because he expressed a political

opinion violated his first amendment rights.

     The referee found that defendant knowingly and repeatedly

violated plaintiff's ban on "No Scabs" signs.  The referee rejected

defendant's first amendment argument, observing that defendant

cited no authority that the denial of unemployment benefits

converted plaintiff's restriction on speech into state action. 

     Defendant appealed.  On April 1, 1994, the Board remanded the

matter for a new hearing because the incomplete transcript of the

hearing frustrated proper review of the decision.   On remand,

however, the parties did not present any evidence but stipulated to

the facts "obtained in [the referee's] previous decision" from the

December 22, 1993, hearing. 

     Defendant made further arguments for reversing the denial of

benefits.  He observed that, in January 1994, the NLRB's regional

counsel brought a complaint against plaintiff, alleging that the

company's actions against Gerhardt and two other workers (Arendt

and Kolzow) who displayed "Stop Scabs" signs amounted to an unfair

labor practice.  Furthermore, the NLRB filed a similar complaint on

defendant's behalf.  Finally, the Board had just reversed the

referee's decision in Gerhardt.  See Janet E. Kolzow, Bd. of

Review, Ill. Dep't of Empl. Sec. No. ABR--93--15346 (July 29,

1994)(Kolzow).  (Defendant submitted copies of these complaints and

of the Board's decision.)  From this, defendant argued that

plaintiff could no longer maintain that its rule against "No Scabs"

signs was reasonable.  

     The referee disagreed, explaining that he was not bound by the

NLRB's complaint.  In May 1994, the referee rejected defendant's

request for a rehearing so that he could introduce more evidence

that plaintiff's rule was unreasonable.  The referee affirmed the

denial of benefits, and defendant appealed to the Board.

     The Board reversed the referee's decision, holding that

defendant's action was not misconduct.  The Board relied on Kolzow,

in which it decided that the claimant was not guilty of misconduct

when she wore a "No Scabs" button on the job at plaintiff's plant. 

The Board acknowledged that a 1956 federal appellate decision

upheld plaintiff's authority to ban the display of the term "scab"

in the workplace.  See Caterpillar Tractor Co. v. National Labor

Relations Board, 230 F.2d 357 (7th Cir. 1956).  However, according

to the Board, this decision was now "superseded" by the complaint

the NLRB brought against plaintiff in January 1994.  Thus, the

Board overruled Gerhardt.  Applying Kolzow, it ruled that

defendant's display of the sign was not misconduct; therefore, he

was entitled to unemployment benefits.       

     Plaintiff appealed to the circuit court.  On cross-motions for

summary judgment, the court reversed the Board and held that

defendant must be denied benefits because he was fired for

misconduct.  The court could not accept the Board's premise that

Caterpillar Tractor had been "superseded" by the NLRB's complaint

against plaintiff.  As Caterpillar Tractor controlled, defendant

was properly discharged for violating a reasonable rule, and he

could not collect benefits.  The court granted plaintiff summary

judgment.  Defendant appealed. 

     Defendant argues that the circuit court erred in reversing the

Board because (1) the Board properly found that he was not guilty

of misconduct; and (2) in any event, he is entitled to benefits

because he acted in the reasonable good-faith belief that he had a

legal right to display his sign.  Although we cannot accept the

Board's reasoning, we believe it properly found that defendant's

peaceful display of the sign outside the workplace was not

misconduct.  Therefore, we reverse the circuit court without

considering defendant's "good-faith" argument.

     On review of an administrative agency's decision, a court

determines only whether the agency's decision is against the

manifest weight of the evidence or legally erroneous.  Hoffmann v.

Lyon Metal Products, Inc., 217 Ill. App. 3d 490, 497 (1991);  Adams

v. Ward, 206 Ill. App. 3d 719, 723 (1990).  However, the reviewing

court need not give the same deference to the agency's conclusions

of law, such as the construction of a statute, as it must give to

the agency's factual findings.  Adams, 206 Ill. App. 3d at 723. 

     We agree with the circuit court and plaintiff that the Board

erred in using the NLRB's complaint against plaintiff as authority

here.  Apparently, the Board believed that the NLRB's challenge to

plaintiff's ban on "No Scabs" signs overrode a federal court's

finding that the policy is reasonable.  Thus, in the Board's view, 

as federal law now outlaws plaintiff's policy, defendant's

violation thereof cannot be "misconduct" because misconduct

includes only violations of reasonable work rules.  See 820 ILCS

405/602(A) (West 1992).

     The Board's reasoning is plainly unsound.  If Caterpillar

Tractor is good law, it cannot be "overruled" by an NLRB ruling--

much less by the mere filing of a complaint by a regional office of

the NLRB's prosecutorial arm.  As an administrative agency, the

NLRB is bound by applicable judicial interpretations of the

controlling law.  Mary Thompson Hospital, Inc. v. National Labor

Relations Board, 621 F.2d 858, 863-64 (7th Cir. 1980); Allegheny

General Hospital v. National Labor Relations Board, 608 F.2d 965,

969-71 (3d Cir. 1979).  The Board inexplicably slighted this

elementary principle.  Thus, if plaintiff's rule is unreasonable,

it cannot be so on the ground on which the Board relied.

     Defendant urges that the rule is unreasonable and that

Caterpillar Tractor does not dictate otherwise.  He also maintains

that case law since Caterpillar Tractor casts doubt on the legality

of plaintiff's flat ban on the display of the "s-word" anywhere on

its property.  We agree with defendant that Caterpillar Tractor

does not control and that its vitality is dubious.  

     In Caterpillar Tractor, about 250 of plaintiff's employees,

while on the shop floor, wore buttons saying "Don't be a Scab." 

When they persisted in wearing the buttons during work hours,

plaintiff sent them home.  The appellate court held that the

employees' behavior was not protected by federal law because the

employer's right to maintain discipline included the power to curb

activities tending to disrupt the efficient operation of the

business.  Declaring that "[p]erhaps no greater disruptive force

can be found in the field of labor relations than that innate in

the application of the term 'scab' to one employee by his fellow

workman" (Caterpillar Tractor, 230 F.2d at 358), the court

concluded that the ban was valid because plaintiff justifiably

anticipated the buttons would "prove disruptive of employee harmony

in its plant and destructive of discipline in production" (emphasis

added) (Caterpillar Tractor, 230 F.2d at 359).  The court cautioned

it was not holding that an employer could prohibit displays which

did not interfere with discipline or efficiency.  Caterpillar

Tractor, 230 F.2d at 359.

     Unlike defendant here, the employees in Caterpillar Tractor

displayed their signs in the workplace itself, not merely on

company property, while they and other employees were working. 

From the language we have quoted and emphasized, it appears the

court placed great weight on this fact.  The relationship between

displays and disruptions in production is likely greatest when the

displays occur at the same time and place as the production, and a

ban on controversial signs that is proper if limited to the

workplace may be improper if applicable to all company property. 

      Thus, in Asociacion Hospital Del Maestro, Inc. v. National

Labor Relations Board, 842 F.2d 575, 577-78 (1st Cir. 1988), the

court wholly invalidated the employer's ban on union insignia

anywhere on its property.  The court struck down the rule even

though it would have been proper had it been limited to immediate

patient care areas.   

     In National Labor Relations Board  v. Pratt & Whitney Air

Craft Division, United Technologies Corp., 789 F.2d 121 (2d Cir.

1986), the union conducted a membership drive in which it 

distributed literature calling nonunion workers "scabs" and

"freebies" and quoting Jack London's (unfavorable) comparison of

such people to rattlesnakes and vampires.  The union also posted

lists of nonunion workers employed at the plant.  In response, the

employer banned the distribution or display of such literature

anywhere on company property, even outside working hours.  The

court held that applying the ban to nonwork areas or nonworking

hours was allowable only if the employer showed special

circumstances, i.e., the use of words "so offensive on their face

as to create a reasonable expectation that plant discipline will be

disrupted" (Pratt & Whitney, 789 F.2d at 128) or language so

provocative as to threaten plant peace or safety (Pratt & Whitney,

789 F.2d at 128).  Taking note of recent case law (which we shall

discuss shortly), the court concluded that the terminology was not

facially offensive because, as courts had long recognized, epithets

such as "scab" are routinely used in labor disputes and are not

necessarily outside the protection of federal labor law.  As the

employer had not shown that the union's language was so provocative

as to threaten a breach of peace in the workplace, the NLRB

properly invalidated the ban.  Pratt & Whitney, 789 F.2d at 128. 

     In light of this authority, we believe that Caterpillar

Tractor is distinguishable, as it involved a restriction only on

displays in the workplace during working hours.  Moreover, the

reasoning of Caterpillar Tractor has been undermined, if not

repudiated, by later cases recognizing that, because labor disputes

are inherently bitter affairs, strong words such as "scab" are

commonplace and may be protected.  See Linn v. United Plant Guard

Workers of America, Local 114, 383 U.S. 53, 58-61, 15 L. Ed. 2d

582, 587-89, 86 S. Ct. 657, 660-62 (1966); Pratt & Whitney, 789

F.2d at 128.  One federal appellate court has openly rejected

Caterpillar Tractor insofar as it suggests a flat ban on displaying

the term "scab" is per se reasonable.  See National Labor Relations

Board v. Mead Corp., 73 F.3d 74, 79-80 (6th Cir. 1996).

     The foregoing suggests that plaintiff's reliance on federal

law to establish that its rule is "reasonable" under section 602(A)

may be misplaced.  Federal authority holds that employers'

restrictions on pro-union speech require "special circumstances"

and that the use of the term "scab" is not in itself a special

circumstance.  Thus, the wide-ranging rule at issue here might well

fail a federal challenge, especially a claim of overbreadth.  

     In so saying, we agree with plaintiff's premise that the

acceptability of an employer's rule under federal law is highly

probative of whether the rule is "reasonable" under state law.  The

criteria for whether a rule is a fair labor practice, e.g., its

relationship to workplace efficiency, safety, or discipline, its

clarity and precision, and the extent to which it infringes on

legally protected behavior--are also among the major considerations

in a determination of whether it is a "reasonable" rule under

section 602(A).  See generally Garner v. Department of Employment

Security, 269 Ill. App. 3d 370, 373-74 (1995); Bochenek v.

Department of Employment Security, 169 Ill. App. 3d 507, 509

(1988); Neville v. Board of Review of the Department of Labor, 143

Ill. App. 3d 548, 550 (1986).  Moreover, both employers and

employees have a right to rely reasonably on what federal courts

declare they may or may not do.  The problem here is that, contrary

to plaintiff's assumptions, it is far from obvious whether federal

law would permit the rule at issue.  Thus, we cannot accept

plaintiff's assertion that federal law proves that the rule is

reasonable under section 602(A).

     Moreover, the incomplete record before the referee, the Board,

and this court makes it impossible to determine whether plaintiff

demonstrated special circumstances that would demonstrate that

plaintiff's rule was reasonable to control the violence or

harassment (on plaintiff's property).   The lack of this evidence

was the result of a technical malfunction at the original hearing

before the referee.  Nevertheless, after the Board remanded the

matter for a new hearing because of the incomplete transcript, the

parties stipulated to the "facts obtained in [the referee's]

previous decision from a hearing dated 12/22/93."  While

plaintiff's counsel's closing argument referred specifically to

breaches of peace at the plant, as did the NLRB's letter to counsel

for the union, the referee's decision did not reference any facts

demonstrating special circumstances in support of his conclusion

that plaintiff's rule was reasonable.

     Were conditions at plaintiff's facility as the NLRB appears to

have believed, plaintiff's rule could have been found to be

reasonable.  However, in the absence of such facts in the record

before the Board, the Board's finding that the plaintiff's rule was

unreasonable is not against the manifest weight of the evidence.

     Even  assuming,  arguendo, that plaintiff's rule was

reasonable, we agree with the defendant that he is entitled to

benefits under section 602(A) because his alleged misconduct was

not "connected with his work" and that the rule did not govern his

"behavior in [the] performance of his work."  See 820 ILCS

405/602(a) (West 1992). 

     The claimant has the burden of establishing his legal right to

unemployment insurance, but the statute must be construed liberally

in favor of awarding benefits.  Hoffmann, 217 Ill. App. 3d at 498;

Adams, 206 Ill. App. 3d at 723.  The case law does not appear to

address a situation similar to this one.  Of course, it is settled

that not every violation of a company rule is misconduct, as there

must be "some nexus between the rule and the employment."  Jackson

v. Board of Review of the Department of Labor, 105 Ill. 2d 501, 512

(1985); see also Neville, 143 Ill. App. 3d at 550-51; Profice v.

Board of Review of the Illinois Department of Labor, 135 Ill. App.

3d 254, 258-59 (1985).  However, these cases (and the others the

parties cite) involve conduct, such as on-the-job intoxication,

that demonstrably had a direct effect on how the employee did her

or his work.  The application of the statutory language to a rule

that lacks such a straightforward connection to job performance (or

to the workplace) is less clear.  We believe the statute is

ambiguous and that benefits must be awarded in this case. 

     Defendant's behavior was "connected with his work" in that it

took place on his employer's property, related generally to his

employment and the conditions thereof, and had the reasonable

potential to affect the performance of his duties.  However,

placing the sign in the window of his truck was not "connected with

his work," in the sense that it occurred outside the actual place

of work, did not relate directly to the performance of his job as

a lathe operator, and had no actual direct or indirect effect on

the performance of his duties (other than, of course, leading to

his discharge).   

      Similarly, it is questionable whether the regulation as it

was applied here governed defendant in the performance of his work. 

In some general way, almost any employer's regulation might do so. 

However, the rule governed defendant only in his use of the

company's parking lot, which (at least under the facts here) was

only an adjunct to the performance of his work.  Giving section

602(A) the required liberal construction, we hold that, at least

under the facts here, the rule did not govern defendant in the

performance of his work.  

     The Board's mixed findings of law and fact that defendant was

not discharged for misconduct is supported by the record submitted

to the Board.  Therefore, defendant is entitled to unemployment

insurance benefits.

     The judgment of the circuit court of Kendall County is

reversed, and the decision of the Board is reinstated.   

     Judgment reversed; award reinstated.

     GEIGER, P.J., and McLAREN, J., concur.