LEE B. HURST, Plaintiff-Appellant, v. THE DEPARTMENT OF EMPLOYMENT SECURITY *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—08—1273

Opinion filed July 24, 2009.

Timothy Huizenga, of Legal Assistance Foundation of Metropolitan Chicago, of Chicago, for appellant.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Elaine Wyder-Harshman, Assistant Attorney General, of counsel), for State of Illinois appellees.

PRESIDING JUSTICE FITZGERALD SMITH delivered the opinion of the court:

Plaintiff Lee Hurst appeals from an order of the circuit court of Cook County, affirming the ruling of the Board of Review of the Illinois Department of Employment Security (Board) that he was ineligible for benefits under section 602(A) of the Illinois Unemployment Insurance Act (Act) (820 ILCS 405/602(A) (West 2004)) due to misconduct in connection with his work. On appeal, plaintiff contends that the Board's finding of misconduct was erroneous and that he was denied a fair hearing.

The record shows that plaintiff was employed by Illinois Bell Telephone (Bell) as a customer assistant technician for 10 years. He

was terminated on May 23, 2005, for failing to report that he had been arrested and incarcerated for driving while intoxicated on April 18 and 19, 2005.

Following his discharge, plaintiff submitted a claim for unemployment benefits. The claims adjudicator granted his claim on January 5, 2006, stating that Bell had not substantiated its allegation of misconduct. Bell appealed that decision and requested a hearing in a letter dated February 6, 2006. On February 28, 2006, a Department referee conducted a telephone hearing with plaintiff, Bell representative Mara Smith, supervisor Crystal Thomas-Johnson, and area manager Matthew Cash.

In that proceeding, plaintiff testified that he performed his job duties in the field and was required to have a valid driver's license. On April 19, 2005, plaintiff was arrested for operating a vehicle while intoxicated and incarcerated for 1½ days thereafter. During that time, someone called Bell on his behalf and said that he was sick.

When he returned to work on April 22, 2005, Thomas-Johnson pulled him off a job and asked him to produce a driver's license. He gave her an expired license, mistakenly thinking that it was his current one, and realized that the police must have retained his current license. Thomas-Johnson told plaintiff that he could not work and had to go home until he could produce a valid driver's license.

Plaintiff went home, gathered his paperwork from the arrest, returned to work, and explained to her that he had been arrested. Thomas-Johnson told him that he was supposed to inform her of his arrest as soon as he returned to work, and plaintiff responded that he was unaware of that requirement. He further testified that he had received and read an employee handbook containing the code of conduct, but was unfamiliar with the portion directing him to report an arrest to his employer.

On May 23, 2005, plaintiff was discharged by Thomas-Johnson for failing to timely inform Bell of his traffic violation for operating a vehicle while intoxicated. He was also told that if he had reported the violation, he would not have been discharged.

Thomas-Johnson testified that she asked plaintiff to produce his driver's license because she had read a newspaper report of his arrest for driving under the influence. Plaintiff produced an expired license from his personal car, and she told him that he could not drive a company vehicle until he could produce a valid driver's license. She then advised him to take a vacation day until he could provide a valid driver's license. Plaintiff later called Thomas-Johnson and asked her to come to his home so they could talk about a private matter; she responded that he would have to come to the workplace. When plaintiff

arrived, he gave her a number of citations, which she turned over to human resources.

Thomas-Johnson further testified that the rule which plaintiff violated required him to report any criminal charge, resulting from conduct occurring on or off the job, to his immediate supervisor upon returning to work. A failure to report such a charge would result in disciplinary action up to and including dismissal. Thomas-Johnson informed plaintiff of the rule when he told her of his arrest.

Thomas-Johnson further testified that this rule was covered in a meeting, which plaintiff attended, about two weeks before the incident. Although she could not remember being at that specific meeting, she explained that it was her practice to attend employee meetings that took place while she was at work. She further testified that the employee handbook, and the often overlooked portions thereof, were discussed at these meetings.

The referee admitted into evidence the claims adjudicator's determination and Bell's appeal and protest, which, the referee stated, were timely filed and provided her with jurisdiction.

On March 1, 2006, the referee issued an order disqualifying plaintiff from unemployment benefits under section 602(A) of the Act, finding that he had been discharged for misconduct in connection with his work. In reaching this conclusion, the referee determined that plaintiff knowingly failed to report his arrest or inform Bell that his driver's license was being held by the police.

Plaintiff appealed the referee's decision to the Board asserting that he was unaware of the rule requiring him to report his arrest and that he unintentionally presented Thomas-Johnson with an expired license. He further alleged that he did not receive a fair hearing because the referee was biased and inappropriately focused on his expired license. On May 5, 2006, the Board affirmed the denial of benefits and incorporated the referee's decision into its own.

On May 17, 2006, plaintiff filed a *pro se* complaint for administrative review of the Board's decision in the circuit court of Cook County. On January 5, 2007, after obtaining counsel, plaintiff filed a memorandum of law in support of his complaint, alleging that Bell failed to file a timely protest, that the referee was biased, and that the evidence did not support a finding of misconduct. He maintained that the Board's determination of misconduct was erroneous because Bell's rule did not govern his behavior in the performance of his work, he did not deliberately violate the rule, and Bell was not harmed. On March 14, 2007, the court entered an order remanding the cause to the Board with instructions to conduct a hearing on the timeliness of Bell's protest to plaintiff's claim and issue a supplemental decision to the court.

On July 18, 2007, the Board remanded the matter to the referee for a new hearing on the timeliness of Bell's protest. The referee dismissed Bell's appeal based on its failure to appear at the hearing on August 22, 2007. On September 24, 2007, however, the Board remanded the matter to a new referee, finding that the parties were not adequately notified of the previous hearing.

On October 22, 2007, a Department referee conducted a telephone hearing with plaintiff's attorney, Bell representative Terry Newman, and Bell witness Ruth Renner. The referee concluded that Bell had filed a timely protest and therefore achieved employer party status. The Board then affirmed the referee's decision in its supplemental decision of November 7, 2007.

Following that ruling, plaintiff filed a complaint for administrative review of the Board's decision in the circuit court of Cook County alleging that the Board's decision was against the manifest weight of the evidence and contrary to law. On April 3, 2008, the circuit court affirmed the Board's decision that Bell filed a timely protest and continued the matter for a hearing on the merits. On April 16, 2008, the circuit court affirmed the Board's decision, finding that it was not against the manifest weight of the evidence, contrary to law, or clearly erroneous.

In this appeal from that order, plaintiff first challenges the Board's determination that he was ineligible for unemployment benefits due to misconduct in connection with his work. The question of whether an employee was properly terminated for misconduct in connection with his work involves a mixed question of law and fact, to which we apply the clearly erroneous standard of review. *Oleszczuk v. Department of Employment Security*, 336 Ill. App. 3d 46, 50 (2002). An agency decision is clearly erroneous where the entire record leaves the reviewing court with the definite and firm conviction that a mistake has been made. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001).

The individual claiming unemployment insurance benefits has the burden of establishing his eligibility; and, if he was discharged for misconduct, he is deemed ineligible to receive those benefits. *Manning v. Department of Employment Security*, 365 Ill. App. 3d 553, 557 (2006). Misconduct is defined as the deliberate and willful violation of a reasonable rule or policy governing the individual's behavior in performance of his work, provided such violation has harmed the employer or has been repeated by the employee despite previous warnings. 820 ILCS 405/602(A) (West 2004).

■ Plaintiff asserts that Bell's rule requiring him to report his arrest to his immediate supervisor upon returning to work did not

govern his behavior in the performance of his work and, thus, could not form the basis of a finding of misconduct. The Board responds that plaintiff forfeited this issue by failing to raise it in the administrative proceedings before the referee or the Board.

Plaintiff, relying on *Garlington v. O'Leary*, 879 F.2d 277, 282 (7th Cir. 1989), and *Reimer v. Illinois Department of Transportation*, 148 F.3d 800, 804 n.4 (7th Cir. 1998), replies that the Board has forfeited its waiver argument by failing to raise it at the circuit court level. We note that lower federal decisions are not binding on this court and can be held to be no more than persuasive. *People v. Miller*, 107 Ill. App. 3d 1078, 1086 (1982). Notwithstanding, we find plaintiff's cited cases distinguishable from the case at bar. In both *Garlington* and *Reimer*, the appellee failed to raise the waiver argument at the appellate level, whereas in this case, the Board included its waiver argument in its appellate brief. Therefore, we will now consider whether plaintiff has waived his contention that Bell's rule does not govern his behavior in the performance of his work.

We observe, initially, that issues or defenses not raised before the administrative agency will not be considered for the first time on administrative review. *Carpetland U.S.A., Inc. v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 396-97 (2002); *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 212-13 (2008).

Here, plaintiff first alleged that the rule did not govern his behavior in the performance of his work in his January 5, 2007, memorandum of law in support of his complaint for administrative review of the Board's decision. It is thus clear that he failed to raise this issue before the administrative agency, and the rule of procedural default precludes judicial review of that issue. *Cinkus*, 228 Ill. 2d at 212-13.

Moreover, the rule at issue did govern plaintiff's behavior in the performance of his work. The rule required plaintiff to report any criminal charges upon his return to work, and, as such, the rule governed his behavior in the performance of his work.

In reaching that conclusion, we have considered *Caterpillar, Inc. v. Fehrenbacher*, 286 Ill. App. 3d 614 (1997), cited by plaintiff, and find it distinguishable from the case at bar. Unlike in *Caterpillar*, 286 Ill. App. 3d at 623, plaintiff's failure here to report his arrest occurred at the actual place of work, related directly to the job requirement that he possess a valid driver's license, and had a direct effect on his ability to perform his job duties.

■ Plaintiff next asserts that he was unaware of the rule at issue and therefore did not deliberately violate it. An employee willfully or

deliberately violates a work rule or policy by being aware of, and consciously disregarding, that rule. *Odie v. Department of Employment Security*, 377 Ill. App. 3d 710, 713 (2007).

Plaintiff testified that he received and read the employee handbook containing the rule at issue. Thomas-Johnson testified that plaintiff attended a work meeting two weeks before the incident at which the rule was addressed. The record, therefore, supports the Board's determination that plaintiff was aware of the rule and willfully disregarded it. *DeBois v. Department of Employment Security*, 274 Ill. App. 3d 660, 665 (1995).

In reaching that conclusion, we have considered plaintiff's assertion that Thomas-Johnson's testimony was incredible because she did not testify that she attended the work meeting at issue, and find it unavailing. It is the responsibility of the administrative agency to weigh the evidence, determine the credibility of witnesses, and resolve conflicts in testimony. *Nichols v. Department of Employment Security*, 218 Ill. App. 3d 803, 809 (1991). We have no basis for interfering with the Board's credibility determination in this instance (*Carroll v. Board of Review, Illinois Department of Labor*, 132 Ill. App. 3d 686, 691 (1985)), where Thomas-Johnson testified to the existence of the rule and plaintiff's awareness of it through the handbook and the employee meetings.

Plaintiff further asserts that there is no evidence that Bell was harmed by the violation or that it was repeated. The weight of authority recognizes that harm to the employer can be established by potential harm and is not limited just to actual harm. *Manning*, 365 Ill. App. 3d at 557; *Livingston v. Department of Employment Security*, 375 Ill. App. 3d 710, 717 (2007); *Greenlaw v. Department of Employment Security*, 299 Ill. App. 3d 446, 448 (1998); *Brodde v. Didrickson*, 269 Ill. App. 3d 309, 311 (1995); *Bandemer v. Department of Employment Security*, 204 Ill. App. 3d 192, 195 (1990); *Winklmeier v. Board of Review of Department of Labor*, 115 Ill. App. 3d 154, 156 (1983).

By failing to alert his supervisor of his arrest for driving while intoxicated, plaintiff impeded Bell's ability to ascertain whether he was in possession of a valid driver's license in conformity with the job's requirements. The potential harm caused by such conduct included Bell's potential exposure to liability resulting from any injuries caused by plaintiff while driving without a valid license in performance of his work-related duties. *Livingston*, 375 Ill. App. 3d at 718. Furthermore, by failing to report his arrest and concealing that information, plaintiff engaged in insubordinate behavior that was harmful to Bell's interest in maintaining an orderly workplace. *Greenlaw*, 299 Ill. App. 3d at 449.

In light of the above, we conclude that the Board's determination that plaintiff was discharged for misconduct in connection with his work and subject to a disqualification of benefits was not clearly erroneous.

■ Plaintiff further contends that he was deprived of a fair hearing because the referee was antagonistic and hostile toward him based on the mistaken belief that he was lying when he testified that he was allowed to keep his old driver's license after he renewed it.

Review of a claim of bias on the part of an administrative official begins with the presumption that the official was objective and capable of fairly judging the issues. *Kimball Dawson, LLC v. City of Chicago Department of Zoning*, 369 Ill. App. 3d 780, 791-92 (2006). Bias or prejudice may only be shown if a disinterested observer might conclude that the official had in some measure adjudged the facts as well as the law of the case in advance of hearing it. *Waste Management of Illinois, Inc. v. Pollution Control Board*, 175 Ill. App. 3d 1023, 1040 (1988).

The record shows that the referee did not in any way prevent plaintiff from fully presenting his argument during the hearing. *Kimball Dawson*, 369 Ill. App. 3d at 792. Moreover, the fact that the referee took a strong position on plaintiff's claim that he was allowed to keep his old driver's license when he renewed it does not overcome the presumption that the referee was objective. *Waste Management of Illinois*, 175 Ill. App. 3d at 1040.

Accordingly, we affirm the order of the circuit court of Cook County.

Affirmed.

O'MARA FROSSARD and TOOMIN, JJ., concur.